Pettibone, J.,
delivered the opinion of the Court.
Marianne Stokes filed her bill in the Court below, for a divorce, a mensa et thoro, from her husband, "William Stokes, and for alimony. The causes alledged in the bill for the divorce, are, ill usage, abandonment and adultery; to which, there was a demurrer, which was overruled; then an answer, which was stricken out by the Court ¡ and then the plea of not guilty, on which the parties went to trial. The ill usage has not been found by the jury. The finding of the jury, as to the other causes, is in the following words: “ that the said William Stokes and Marianne Stokes were married in the year 1802, and that they separated in 1807, by consent; and that the said William Stolcos abandoned his wife in England, at the city of London, and a£ *229 the town of St. Louis, in the State of Missouri 5 and that the said William Stokes committed adultery in England, at the city of London, from the year 1809 to 1818, and at St. Louis, State of Missouri, since his arrival in this place.”
The abandonment is not sufficiently charged in the bill. It must he “ a wilful and malicious desertion and absence, without a reasonable cause.”
It appears, by the complainant’s own showing, that she and her husband separated by consent, in 1807, and that they have never lived together since 5 that, in 1816, she left the neighborhood of her husband, in England, and went over to Trance; that, while she was there, her husband, in the year 1818, removed from England to the United States, without giving her any notice of his removal, or making any provision for her support. So long as she lived separate from her husband, by consent, he could not be said to abandon her, within the meaning of the act. The finding of the jury, on that head, is also too indefinite as to the time or kind of abandonment.
The adultery is the only cause remaining. The bill states, “ that, subsequent to the separation of the parties, by consent, the said William received into his house, a woman, named Ann Smith, as his mistress, and that she continued to live with him as such, until his departure from England.” This is not a sufficient charge ■of adultery in England. It is only stating the evidence from which the fact might be inferred. But grant it to be sufficient, and that the finding of the jury on this part of the case is good, which I do not admit, it then presents the question, whether adultery in England, committed under the circumstances which this case presents, ought to be regarded as a cause of divorce here. The parties were both domiciled in England, when and where the offence was committed. The complainant was cognizant of it for years before the removal of the defendant to this country.
The laws of-England offered her redress ; she was free to seek it there, if she wished; she was under no coercion of her husband, for she lived separate from him; she was not forced away by him, before she could have an opportunity to make her complaints. If, for nine years, she could behold, without complaining, the open adultery and profligacy of her husband, I see no reason why the Courts of this ■country should, at this late hour, be called upon to interfere in her behalf. It is against good policy and good morals to do it. Investigating cases of this kind, leaves a bad impression upon the public mind, and has a tendency to deprave the public morals, and ought not to be resortecl to, only where the due administration of justice imperiously requiies it. Every offence, committed within our own countiy, against the morals and manners of society, we are bound to notice and punish, whenever-we can get an opportunity. But it is carrying our comity very far, to say, that we will investigate (he adulteries and family quarrels which took place in England, perhaps ten years ago, when the parties had an opportunity of applying to their own Courts. I consider the adultery in England as waived by the conduct of the complainant; see 1 Johns. Chan. Rep. 490. And I am unwilling to establish the principle, that ■parties may lie by in their own country, under injuries of this kind, for years, ■and then come here and ask us for the redress, which they inight, and ought to have ■obtained there.
As to adultery being a good cause for a divorce, a mensa et thoro, I have no doubt In the ecclesiastical Courts in England, they could only be divorced from bed and board for that cause. Our statute, so far from prohibiting such a divorce, for this cause, expressly says, that it shall and may be lawful, for the injured and innocent *230 persons, to obtain a divorce, not only from bed and board, but also from the bonds of matrimony itself, leaving it at the option of the party, which kind of divorce to take.
I am, also, clearly of opinion, that a separation, by consent, is no license for the commission of adultery, and that adultery, committed after such a separation, is a good cause for divorce.
The next question, then, is, whether the adultery which is found to have been committed in Missouri, is sufficient to warrant the decree for the divorce, which was made in the Court below. In the first place, the adultery is not sufficiently charged in the bill. In the second place, it is not sufficiently found by the jury. The bill states, “that the said William Stokes is now residing near the town of St. Louis, with the aforesaid Ann Smith, whom he has, as your petitioner is informed and believes, imposed on the people of thts State, as his lawful wife/’ &c.
From this statement, we are left to presume the fact of adultery: 4 Mass. Rep. 586. It is not a necessary presumption. The rule of pleading is well settled, as well in chancery as at law, that every material fact should be explicitly stated, and not be left to inference or presumption : Cadd v. Cadd, 3 John. Chan. Rep.
The finding of the jury does not help out the insufficiency of the allegation. The-finding is, that the said William Stokes committed adultery at St. Louis, in Missouri, since his arrival in this place. It might have been on the eve of the trial, long after the commencement of the suit. It might have been with a different person, than the one named in the bill. In either case, the finding would not relate to the charge in the bill. It would be for a distinct offence, which the defendant could not be supposed prepared to defend himself against. Being of opinion, therefore, that the adultery in England, does not, under the particular circumstances of this case, afford a sufficient cause for the divorce; and being, also, of opinion, that the finding of adultery committed in Missouri, is too uncertain, and without any sufficient charge in the hill to which it can relate, the decree must be reversed, and the cause remanded to the Court below, fpr anew trial, with leave to both parties to amend their pleadings.
As the cause is to he sent hack for another trial, it may he important for the Court to itimate an opinion on some of the points which have been discussed in this case, and on which it is supposed to depend.
First. We are of opinion that the deed of separation is no bar to this application, on the part of the wife : 11 Vez. jr. 526. St. John v. St. John.
Second. One year’s residence of complainant is not necessary, previous to an application for a divorce, a mensa et thoro. It is only necessary where the application is for a divorce from the bonds of matrimony: see Geyer’s Dig. tit. divorce, sec. 5.
Third. Adultery is a good cause for divorce, from bed and board, if committed within the State, or while the injured party is domiciled within this State.
Fourth. That different causes of divorce may he joined in the same hill: 4 Mass. Rep. 430, Young v. Young.
Fifth. That the cause for divorce ought to be specifically alledged in the bill, and not left to inference or presumption: 4 Mass. Rep. 506, 586, Tourtilot v. Tourtilot, and Rumie v. Rumie.
Sixth. That the proceeding in this case is not a common law or chancery proceeding, hut is a proceeding sui generis, founded on the statute. But as the statute makes use of terms usea in the ecclesiastical Courts, where alone divorces are prosecuted in England, we think the rules of that Court should govern, so far as they may be applicable to our institutions in law. For instance, we think the defendant should *231 answer specifically to every material allegation in the' bill; that every material fact, asserted on one side and denied on the other, should be distinctly passed on by the jury.
Seventh. We think the decree defective in this case, in not stating the kind of security and the amount of security to be given.