## JACOB KISER

*v*

## SAMUEL HEUSTON *et al.*

1. DEED—*notice.* After receiving and filing a deed for record, it, in contomplation of law, is recorded, and becomes notice to all the world.

2. SAME. Such filing for record is sufficient notice to the world before the Recorder has copied it into his record.

3. MORTGAGE—*lien of, when lost.* A vendee of mortgaged premises will be held an innocent purchaser where the mortgage has been withdrawn from the files by the mortgagor with the consent of the mortgagee, before the same has been spread upon the records, provided, he is a purchaser for a valuable consideration.

4. SAME—*lien of, when reinstated.* A mortgagee by refusing to accept a new mortgage on other lands, in pursuance of an agreement to do so, and consenting to the withdrawal of the first from the files, can only reinstate the first on record, subject to the rights of intervening purchasers.

WRIT OF ERROR to the Circuit Court of the County of Iroquois; the Hon. CHARLES R. STARR, Judge, presiding.

The plaintiff in error on the 2d day of February, 1861, filed his bill in chancery in the Iroquois Circuit Court against Samuel Heuston and Eliza his wife, and Algernon S. Austin, to foreclose a mortgage given by Heuston and wife to him, dated November 25, 1857. Heuston in his answer admits having given the mortgage and that it was unpaid, but sets up a release of the same under an agreement made with the plaintiff that he would secure the debt by a new mortgage on other lands which he had done. Austin alleges in his answer that he is an innocent purchaser without notice of the mortgage from Heuston to plaintiff, that he purchased the land in controversy from Heuston and received a deed on the 17th of December, 1857, which deed was, on the 11th day of January, 1858, recorded upon the record of said county, that he had no notice of any kind of the existence of said mortgage, and that at the time of filing his deed for record said mortgage was not

on file in the Recorder's office of said county, and that he had not the slightest knowledge of the existence of said mortgage, either when he received his deed from Austin or when it was filed for record, and denies that said mortgage is a lien on the land conveyed to him. It appears from the record that the mortgage to the plaintiff was filed for record on the first day of December, 1857, and a memorandum of the filing was then placed upon it by the Recorder of Iroquois county. Subsequently it was taken from the files by Heuston, the mortgagor, under an alleged agreement between himself and Kiser, the mortgagee, that he might do so upon his executing a new mortgage on his home farm to secure the debt. Heuston, in pursuance of said agreement did execute a new mortgage on other land and left it with a magistrate to be delivered to Kiser, and had a release prepared on the first mortgage for Kiser to sign, when he called for the second. Both mortgages were left with the magistrate. Kiser never called for the new mortgage, and never signed the release indorsed on the old one. He obtained possession again, however, of the first or old mortgage, and on the second of April, 1858, filed it a second time for record with the Recorder of Iroquois county. In the mean time, and on the 17th of December, 1857, Heuston and wife conveyed the premises to the defendant, Austin, which conveyance was, on the 11th of January, 1858, placed upon the records of the Recorder of said county. This sale and conveyance by Heuston to Austin was made by Heuston at the instance of one James M. Hood, one of the Trustees of the School Board of said county, and acting as such and as their agent, the Trustees having a prior mortgage on the land in controversy which Heuston was unable to pay. Hood in that transaction represented both Heuston and Austin, acting as the agent of both. It appeared from the evidence that Hood was authorized to settle with Heuston, and to procure the deed to be made by Heuston to Austin, the latter to pay the money to the Trustees, and that at the same time he was authorized by Austin to get the deed from Heuston to him, and to negotiate

also for him in the settlement. Hood procured the deed and the consideration was paid by Austin to the Trustees. It further appeared in evidence that when said deed was delivered to Hood, Heuston mentioned that a man by the name of Jacob Kiser had a mortgage on the premises for about $300, and that he had made arrangements with him to change the mortgage from the school and to put it on his home farm; that at the time of the delivery of the deed to Austin, Hood was told by Heuston that there was a mortgage to Kiser given about the 25th of November, 1857, but that Kiser had agreed to release it and take one on his home farm instead. It did not appear, however, that Austin personally knew of said mortgage to Kiser. Heuston stated upon his examination before the Master, that the only consideration for the deed from him to Austin was that the School Board should relieve him of his notes to the Trustees, and that there was no consideration passed from Austin to him; that Hood knew all about Kiser's mortgage because he hunted Kiser up to see if he would not take another mortgage before the deed was made and that no consideration passed from Austin to him. At the June term of the court, 1863, the case was heard on bill, answer, replication and proof, and at the November term succeeding, a decree was entered that the complainant take nothing by his mortgage on said land but that the same, so far as it is a lien, incumbrance or cloud upon Austin's title, be canceled, and that complainant's bill be dismissed at his costs. Kiser, by his counsel, then caused to be entered of record an order that he excepted to the decision of the court, dismissing the bill, but no bill of exceptions was signed by the Court or made of record further than as above stated.

Mr. JAMES FLETCHER, attorney for the plaintiff in error.

1. Hood was the agent of Austin and had notice of the existence of plaintiff's mortgage, and the notice of Hood was notice to Austin. The notice of the agent is notice to the

principal. Dunlap's Paley on agency, 3d Am. edition, 261, 262 and note A. and authorities there referred to. 2 Hill R. 463, *Bank of U. S.* v. *Davis;* 1 Story's 79, § 408; 3 Gilman Rep. 105,*Rector* v. *Rector et al ;* Story on Agency 131, 140 ; 9 Paige R. 315, *Griffith* v. *Griffith et al.*

The said Austin was bound in law by the notice which Hood had of complainant's mortgage, and it follows that Austin took his deed from Heuston and wife, subject to all the rights both at law and in equity of said complainant to the land.

2. In order to constitute Austin a *bona fide* purchaser for a valuable consideration without notice, it must be that he has actually paid the purchase money for the property before he had notice of the title of the complainant, and this must be shown by the answer and proof, and Austin having failed to do, he can not be regarded as a *bona fide* purchaser without notice. 18 Ill. R. 346, *Brown et al.* v. *Welch ;* 10 Peters R. 210, 211, *Brown* v. *Childs.*

Messrs. WOOD & LONG, attorneys for defendant in error.

1. The oral testimony of Samuel Heuston and the copy of the Heuston mortgage, and of the deed to Austin, are no part of the record, not being contained in a bill of exceptions, in a certificate of the Judge, or in Master's report. *White* v. *Morrison et al.* 11 Ill. 364.

2. Austin was not bound by any notice of the mortgage to Kiser, because the latter told Hood that he had agreed to release it, and it was not necessary to execute a formal release, because it had never been recorded. Austin made diligent examination of the record, besides. Heuston swore, upon the trial the same as in his answer, that he took the mortgage from the files by express authority from Kiser, and the latter ought now to be estopped from asserting any rights under it. *Baker* v. *Pratt,* 15 Ill. 568; *Bowlan* v. *Co. Peoria,* 15 Ill. 543.

3. Both mortgages were in the justices' hands when the deed was made to Austin under the agreement, too, of Kiser,

that he was to take the new mortgage on the Heuston farm. He should therefore be compelled, since other rights have intervened, to rely upon that mortgage.

4. This is a case where there can be no suspicion raised that Austin was not a *bona fide* purchaser. This was a part of a school section, and the Trustees, whom Hood represented, held a first mortgage to the school fund of $800, nearly what the land was worth. As Heuston is unable to pay it, they make this mutual agreement that Kiser shall take other security and give up his mortgage. The Trustees have a chance to sell the land to Austin for a thousand dollars, which is the consideration in the Heuston deed, and, to save the making of one conveyance, they have Heuston convey direct to Austin; and there can be no pretence raised, having any just foundation, that it was not a straight forward, *bona fide* sale to Heuston. For these reasons the decree should be affirmed.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was a suit in Chancery, commenced by Kiser to foreclose a mortgage executed by Samuel Heuston and Eliza Heuston, his wife. Defendant, Austin, set up by his answer as a defense, that he was, after the execution of the mortgage, an innocent purchaser of the mortgaged premises, without notice, and for a valuable consideration. Heuston by his answer admits the execution of the note and mortgage, and that the money had not been paid, but sets up and relies upon the release of the mortgage under an agreement of the parties interested. The oath of the parties is waived to their answers by the bill. On a hearing in the court below, relief was denied and the bill dismissed.

It appears from the evidence, that Heuston and wife executed a mortgage on the premises in controversy, to Kiser, on the 25th day of November, 1857, and filed it for record in the proper office on the same day. That Heuston and wife executed

a deed for the same premises to Austin on the 17th day of December following, which was filed for record on the 11th day of January, 1858. It also appears from the evidence that at the time Heuston and wife executed the deed to Austin, Heuston had re-possessed himself of the mortgage executed to Kiser, having withdrawn the same from the Recorder's office before it was spread upon the record, and canceled the Recorder's file mark, as he claims, with the consent of Kiser. He afterwards obtained possession of his mortgage and had it recorded on the 2d day of April, 1858. The evidence, we think, shows that the mortgage to Kiser was withdrawn from the Recorder's office with his consent, and with the agreement that he was to take a new mortgage on other land to secure his debt. This is testified to by both Hood, who acted as Austin's agent in purchasing the land, and by Heuston, who, in pursuance of the agreement, executed the new mortgage and left it with Messer, before whom it had been acknowledged, to be delivered to Kiser if he preferred it to the first mortgage. Hood had the record examined before he purchased for Austin, and found no mortgage to Kiser on record.

It is, however, insisted that Austin had notice of Kiser's mortgage, through his agent, Hood, before he purchased. Heuston says that Hood was informed that the mortgage to Kiser had been filed for record when he took the deed to Austin. Hood states that Heuston informed him that Kiser held the mortgage but was willing to release it and take a mortgage on his home farm. That he saw Kiser, who informed him that he had agreed to release the mortgage and take a new one on the home farm to secure his debt. It also appears that the mortgage on the farm was executed but was not accepted by Kiser.

There can be but little doubt that much, if not all, of this difficulty has originated from the Recorder's violation of his duty in permitting the mortgage to be withdrawn before it was spread upon the records. After receiving and filing a deed for record it, in contemplation of law, is recorded and becomes notice to

the world, and before he has copied it into his record books, to permit it to be withdrawn by the maker, places it in his power to commit the grossest frauds upon innocent purchasers or subsequent incumbrancers. In this case Heuston properly gave notice to the purchaser, but if the instrument had been spread upon the record the purchase would not have been consummated until Kiser had executed a release, and this controversy would have been avoided.

From the evidence, we are of the opinion that Kiser was bound to carry out his agreement with Hood to accept the new security and to release the first mortgage, if the purchase was made on the faith of that agreement. He had no right to hold out hopes and create expectations which would mislead purchasers. He had no right to induce Hood to consummate the purchase under the belief that he would make good his agreement to release this incumbrance, and then insist upon its enforcement. It is, however, said that the agreement by Kiser to release his mortgage was conditional. Heuston says it was, and Hood testifies that he was to release if Heuston would execute a mortgage on his home farm. The evidence shows that this condition was complied with, as Heuston and wife executed and tendered such a mortgage. Hood and Heuston did all they could to have the condition performed, and Kiser alone prevented the mortgage from becoming operative, by refusing its acceptance. We think that there was a sufficient performance of the condition to compel Kiser to release the mortgage, or to estop him from asserting any rights under it as to Austin.

But Austin failed to make out his defense, in not showing that he was a purchaser for a valuable consideration. If he was a mere volunteer and paid, or became liable for nothing as a consideration for the conveyance, then he has not suffered, nor can he suffer any loss. If he paid a consideration for the purchase of the land he should have shown it, and what sum was paid. The fact was referred to in argument that he had satisfied, or became liable to satisfy, a mortgage on the land to

the school fund of the township for eight hundred dollars, as the consideration, either in whole or in part. If this is true, then there was a sufficient consideration to support the purchase and to protect him in his purchase. But the evidence fails to show that such was the fact. If no sufficient consideration was paid to support the purchase, Austin has no right to prevent plaintiff in error from foreclosing his mortgage. For the want of such proof the decree of the court below must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Decree reversed.*