## WILLIAM W. DRAPER

*v.*

## MARY E. DRAPER.

1. WITNESS—*age of child as bearing on competency.* The allowing of a child, nine years of age, to testify, was assigned as error. She testified on her *voir dire* that she "understood the nature of an oath, and that if she did not swear the truth she would get into hell-fire:" *Held,* that intelligence, and not age, was the test of the competency of a witness of tender years, and that the witness was competent according to the most rigid rule.

2. CHANCERY—*final decree without any disposition of the suit as to part of defendants.* Where a final decree was rendered on a bill in chancery without taking the default of, or taking any decree against certain parties defendant, who seemed to have been unnecessary parties, there being no evidence against them, it was *held,* that the bill should have been dismissed as to them, but that a failure to do so, which worked no prejudice to the real and proper defendants, was no sufficient ground for reversing the decree against them.

3. CUSTODY OF CHILDREN—*on decree of divorce.* At common law, as a general rule, subject to some exceptions, the father is entitled to the custody of his infant children as against the mother, but, under our statute relating to proceedings for divorce, the court has a large discretion in determining to which parent the children will be given. It is usual in such cases, where, on the account of tender years, a nurse would be required if the child was awarded to the father, to give it to the mother, if there is nothing in her character rendering her unfit. Such a decree is not conclusive, but may be modified and altered whenever the interests of the child require it.

2—68TH ILL.

4. DIVORCE AND ALIMONY—*injunction restraining sale of lands.* On the hearing of a bill for divorce, the court granted the same, decreed alimony, and set aside a fraudulent conveyance of the defendant to his brother, and perpetually enjoined the brother from selling or disposing of the land conveyed to him: *Held,* that the court erred in making the injunction perpetual as to the brother, and in setting aside the fraudulent conveyance, as it was binding between the parties. A lien should have been decreed on the property for the payment of the alimony, and on its payment the land should have been free from the effect of the decree.

5. FRAUDULENT CONVEYANCE—*facts showing sale fraudulent.* Where a husband, after suit for divorce by his wife, threatened to dispose of his property so that she could get nothing, and such threat was followed by a sale to his brother without any previous offer to sell, and the sale was attempted to be justified on the ground that it was made in payment of a debt which was shown by his oath only, and the property conveyed, according to his own showing, overpaid the debt some $6000, and he gave his brother, at the same time, a chattel mortgage for $1500, and transferred to him a large amount in notes, a decree, finding the sale to have been made in fraud of the rights of the wife, was *held* to be supported by the evidence. The brother purchasing *pendente lite,* and receiving property greatly in excess of his claim, was *held* bound to explain the transaction, and not having done so, or shown payment of the excess, he was considered a party to the fraud.

6. ALIMONY—*reasonableness of.* Where, on decreeing a divorce in favor of a wife, the court fixed her alimony for the support of herself and children at $3000, payable in installments of $500 each and every six months, which sum did not amount to over one-fourth of what the husband owned, according to his own version of losses and of a sham sale, and to only one-eighth of his estate, if the sale was a mere sham, it was *held,* that the allowance was reasonable, and that the times of payment were favorable to the defendant.

APPEAL from the Circuit Court of Washington county; the Hon. SILAS L. BRYAN, Judge, presiding.

Messrs. WATTS & MILLER, for the appellant.

Messrs. CASEY & DWIGHT, and Mr. THOMAS S. CASEY, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill filed by Mary E. Draper, in the Washington circuit court, against William W. Draper, to obtain a

divorce, on the ground of extreme and repeated cruelty. The bill prayed alimony, and that the custody of the children be decreed to complainant. Afterwards, an amended bill was filed, alleging that defendant was fraudulently conveying and otherwise disposing of his property to his brother and others for the purpose of depriving her of alimony, and prayed an injunction to restrain him from selling, and making his brother Horace and a number of other persons defendants. William answered, denying the cruelty charged, and all fraud in selling his property, alleging that he only sold for the payment of his debts. Horace answered, denying all fraud in purchasing, and insisted that it was in good faith.

A trial was had before a jury, resulting in a verdict in favor of complainant, whereupon the court rendered a decree divorcing the parties, giving the custody of the children to complainant, and decreeing the payment of $3000 as alimony, payable in installments of $500 each, every six months. The court also decreed that the conveyance from William to Horace was void, and subjected the land to the payment of alimony, and dissolved the injunction as to the other defendants, but made it perpetual as to him.

It is insisted that the court erred in permitting the daughter of complainant, a child of nine years of age, to testify on behalf of her mother. The grounds of objection are, the want of knowledge and the want of age. She testified on the *voir dire* that she "understood the nature of an oath, and that if she did not swear the truth she would get into hell-fire." This is believed to be within the most rigid test as to the knowledge necessary to permit persons to testify. She seemed to fully comprehend the nature of an oath, and was a competent witness. It is also an elementary rule of evidence that intelligence, and not age, must govern in permitting persons of tender years to give testimony. The law has fixed no age at which they may or may not testify. In this case, the witness seems to have possessed sufficient intelligence, and there is no force in the objection.

It is urged that the court below erred in rendering the decree without defaulting the defendants who had failed to answer, or in failing, on the hearing, to dismiss the bill as to them.    From an examination of the evidence, it will be seen that there is no testimony against them upon which to render a decree that could affect their rights.    They were unnecessary parties, and according to the strict rules of practice the bill should have been dismissed as to them.    But, inasmuch as they do not assign errors, and as no decree was rendered against them, we can not reverse for that reason.    It in nowise concerns appellants whether they were dismissed from the case or not, as no wrong can result to appellants from the want of such dismissal.

It is also urged that the finding of the jury is not sustained by the evidence.    After carefully considering it, we are of opinion that it clearly preponderates in favor of the finding. There was some conflict in the evidence, but it was for the jury to weigh and consider it, and find their verdict as the testimony preponderated ; and having done so, we have no inclination to disturb the verdict.

It is objected, that the court erred in decreeing the custody of the children to the mother instead of to the father ; that he has the legal right to their custody.    At the common law, as a general rule, subject to some exceptions, the proposition is true ; but under our statute regulating proceedings for divorce, the court has a large discretion in determining to which parent the children will be given.    Even at the common law, the court, acting for the best interests of the child, would, when of tender years, usually intrust it to the mother. In such cases, the maternal affection is more active and better adapted to the care of the child than the hired services of a nurse, and the court inclines, until the child advances to an age that does not demand the mother's care, to leave it in her custody, unless her character and habits render it improper and likely to be injurious to the child.

Again, the decree in this respect is not conclusive, but may, whenever the interests of the children may require it, be altered and so modified as may promote their interest. In this case, the children are of quite tender years, and for that reason we have no inclination to reverse or modify the decree in that respect.

It is claimed that the court below erred in vacating the title conveyed by William to Horace, and perpetually enjoining the latter from selling the property. A careful examination of the evidence satisfies us that the conveyance was made in fraud of the rights of complainant. Appellee says, in her testimony, that her husband threatened to dispose of his property so that she could not receive any part of it. This is the only direct evidence on the question, and he does not deny having made the threat. The fact that it was followed by the sale, and, so far as the record shows, he had not previously offered it for sale, are strong proofs of fraud. He showed no disposition to await the event of the suit, but conveyed to his brother 340 acres of land which he stated he sold at $40 per acre, or at the least, the greater portion of it. That quantity at that price would yield $13,640, whilst, as we understand his testimony, he only claimed to have owed his brother $7700; and if so, he overpaid him $5940, without taking into account the large amount in notes transferred to his brother and the chattel mortgage for $1500 given him. Why pay this large sum over and above all existing indebtedness? Can any one claim that this was a fair and honest payment of the debt, if any such existed? Surely not. He, it is true, says he sustained losses, but does not specify when or how; but even admit there were losses, that does not account for the $7000 or $8000, at least, which he overpaid his brother; and yet he says the transaction was fair. Such inconsistent evidence is worth but little, and, taking his threat to sell, with all of the circumstances in evidence, there can not be a doubt that the sale was fraudulent. He does not deny that he had in his hands $20,000 to $25,000 worth of property,

and he has made no other attempt to account for its disposition than by his own inconsistent version of the matter.

It is, however, said, that there is no evidence to show that Horace knew of or participated in the fraud. It is inconceivable that he could receive $7000 or $8000 more than there is any pretense he had any claim to receive, without knowing he was aiding and assisting in the perpetration of a fraud. He knew he had no claim to that large sum, and we infer he must have known of the suit for the divorce and alimony. It is idle to say he did not know his brother was acting fraudulently. He was also purchasing *lis pendens*, and, of course, acquired the property subject to the claim of the wife to her alimony. We regard the evidence as clear that he knew his brother was acting in bad faith to his wife.

Being charged with the fraud, and shown to have received so large a sum above any claim he could have held, and other circumstances appearing in the case, it devolved on Horace to explain the transaction. *Brown* v. *Welch*, 18 Ill. 343. It has been repeatedly held that, on such a charge and presumption established, it devolves on the purchaser to prove that he has paid the purchase money for the property. *Moshier* v. *Knox College*, 32 Ill. 155 ; *Keys* v. *Test*, 33 Ill. 316 ; *Kiser* v. *Heuston*, 38 Ill. 252, and *De Wolf* v. *Pratt*, 42 Ill. 198. But he made no effort, except by the evidence of his brother, to explain the transaction, and in that he signally failed.

The fraud having been thus established, it only remained for the court below to fix the amount of alimony, and the manner in which it should be paid. If the husband owed the debt to his brother, as he claims, but we think has failed to show, still deducting it from the value of his property, there would probably remain $17,000 or $18,000 worth ; or, if the lowest estimate were taken, still there would be over $12,000 remaining, and the alimony would amount to but one-fourth of that sum. If the claim that he owed his brother was but a sham, then the alimony allowed would be but one-eighth part of his estate. The amount allowed, in view of

the large amount of property owned by the husband, and the fact that the wife is intrusted with the care and support of the children, we think was not unreasonable. As to the manner of its payment, we can see no objection. It is more favorable to the husband than if required to pay the whole amount at an early day.

The court below, however, should not have made the injunction perpetual or set aside the conveyance. It was binding between the parties, and the court should have decreed a lien on the land for the payment of the alimony. On its payment, the land should have been free from the effects of the decree, and Horace should then have the power to dispose of it at his own pleasure; hence, the perpetual injunction, and the setting aside of the deed, should not have been decreed. The rights of the wife would have been fully secured by such a lien, followed by a sale in case of non-payment of any one of the installments. The injunction was necessary when granted, but having answered its purpose, it should have been dissolved. The bill should have been dismissed as to all but William and Horace Draper. In these respects, the decree of the court below will be modified in this court, and affirmed in all other particulars, and at the costs of appellants.

*Decree affirmed in part.*