# FANNIE E. CHAPMAN, Appellant, v. FRED E. CHAPMAN and WALTER CHAPMAN.

## Division Two, February 2, 1917.

1. **JURISDICTION: Divorce.** Jurisdiction to hear and determine suits for divorce and alimony in this State depends upon and is limited by statute.

2. **DIVORCE AND ALIMONY: Law Governing.** The action for divorce and alimony, the defenses thereto and the proceedings thereunder, are, as far as suited to the present day situation, controlled by the law of the ecclesiastical courts of England (which is, common law with us) as modified, changed, or, in some matters, supplanted by our statutes.

3. ———: **Action at Law.** A suit for divorce and alimony is an action at law. The fact that the court in the progress of the trial may be called upon, incidentally, to decide collateral questions of equity jurisprudence does not convert the suit into one in equity. Nor does the fact that the trial is without a jury, nor the fact that the provision as to the sequestration of property is still in the statute (by oversight kept in the statute when the Territorial Act of 1807 was revised in 1855), make the proceeding a suit in equity.

4. ———: **Execution Equal to Sequestration.** Whether or not any vitality is left in the statutory provision for sequestration of property in a suit for divorce and alimony (Sec. 2375, R. S. 1909), it can be of no service in a case in which the defendant is brought into court by publication and has real estate in this State subject to execution, for in such case an execution is as far-reaching and valuable as sequestration.

5. ———: **Sale of Property Upon Constructive Notice.** There is no law in this State authorizing a proceeding against defendant's property for alimony on constructive service of process. The State has never exercised the power it possesses in that respect, and the courts cannot exercise it until it is given to them by law. Whatever allegations the petition for divorce and alimony may contain, even though it describes particular real estate, asks that it be sequestered and the judgment for alimony be made a special lien thereon and plaintiff awarded special execution against it, and those allegations are included in the published order of publication, no such judgment can be rendered on constructive notice.

6. ———: ———: **Lien Prior to Judgment.** A writ of sequestration, even though the statute be not void, cannot issue until after judgment for alimony is obtained. Prior to such judgment plaintiff is

not entitled to any lien àgainst defendant's property for the amount of money to be awarded as alimony, nor to "any lawful right, claim or demand to or against" any of his property described in her petition. The court can only render judgment for money as alimony; it is not authorized by statute to make any order or decree in reference to any specific property.

7. ———: ———: ———: **Equitable Right to Subject Assets to Judgment.** Wherever the law gives a certain remedy against legal assets (that is, assets which can be reached by the ordinary processes of courts of law), then equity gives similar relief against equitable assets which are beyond the reach of legal process. But it is a perversion of the rule to suppose that equity gives a remedy for anything as against equitable assets when the law gives none for the same thing as against legal assets.

8. ———: ———: **Proceeding in Rem.** The statutes do not authorize a proceeding *in rem* against defendant's property to satisfy a judgment for alimony in a divorce proceeding obtained on constructive service of process, either at law or equity.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

AFFIRMED.

*Henry H. Oberschelp* for appellant.

The trial court erred in not awarding alimony and rendering judgment therefor against the real estate set forth in the petition and publication. (1) If a defendant is not personally served and does not enter a voluntary appearance, a personal judgment cannot be rendered. Nevertheless, as the State has control over the marriage status of its inhabitants and also over property within its boundaries, in a suit for divorce and alimony, based on service by publication, the court may acquire jurisdiction to render a judgment *in rem* not only as to the marriage status, dissolving it, but also as to the property within the State, subjecting it to alimony award of the court, if the proper foundation is laid by the pleadings and the process. Wesner v. O'Brien, 56 Kan. 724; Harshberger v. Harshberger, 26 Iowa, 503; Benner v. Benner, 63 Ohio St. 220; Hanscom v. Hanscom, 6 Colo. App. 97; Pennoyer v. Neff, 95 U. S. 714; Moss v. Fitch, 212 Mo. 498; Ellison v. Martin, 53 Mo. 578. (2)

In suits for divorce and alimony based on service by publication, in considering the extent of the court's jurisdiction in rendering a judgment *in rem*, there are two distinct *res* to be considered; one the marriage status to be dissolved; the other the husband's property within the State sought to be subjected to the alimony award of the court. Cases under point one. (3) Jurisdiction as to these separate *res* depends mainly upon the allegations in the petition and order of publication. If both set forth the marriage and prayer for its dissolution, the court acquires jurisdiction over the marriage status. But for the court also to acquire jurisdiction over the property to be subjected to the alimony award, both must also set forth the husband's ownership of certain real estate in the State, fully describe the same with prayer to establish and enforce alimony award against said property. Cases under point one. (4) While this precise question has never been presented to the appellate courts of this State, yet the Supreme Court and this Court of Appeals have clearly indicated that if it were they would award alimony and enforce it against the thus described real estate. Moss v. Fitch, 212 Mo. 498; Ellison v. Martin, 53 Mo. 578; Elvins v. Elvins, 176 Mo. App. 645. (5) Wherever husband's property within a State has thus been brought under the control of the court in suits for divorce and alimony, throughout the United States, according to the published decision, alimony has always been awarded and enforced as a special judgment *in rem* against the described property. Wesner v. O'Brien, 56 Kan. 724; Harshberger v. Harshberger, 26 Iowa, 503; Benner v. Benner, 63 Ohio St. 220; Hanscom v. Hanscom, 6 Colo. App. 97. (6) The sections of the Revised Statutes under the heading Divorce and Alimony, sections 2370-2381, contain no provision for process. Any judgment on constructive service for its validity as to the divorce as well as to the alimony depends upon publication in accordance with section 1770 *et seq.* Sec. 1770, R. S. 1909, authorized the publication to dissolve the marriage, as this is a suit "in divorce," and it likewise authorized the publication for the purpose of ren-

dering a judgment *in rem for* alimony against the property mentioned, as it may be regarded as enforcement of a lien, and most certainly is an action which has for its "immediate object the enforcement or establishment of a lawful right, claim or demand to or against any real or personal property within the jurisdiction of the court." Benner .v. Benner, 63 Ohio St. 226. (7) As property of the husband has been brought under the control of the court by the pleadings and process, and the evidence showed and the court found it to belong to the husband, it was the duty as well as the right of the court not only to grant divorce but also to award alimony and enforce the same against said property. Sec. 2375, R. S. 1909.

ROY, C.—Plaintiff sued for divorce and alimony. The trial court granted the divorce, but refused the alimony. She appealed to the St. Louis Court of Appeals, where, in an opinion by ALLEN, J., the judgment was reversed and the cause remanded. REYNOLDS, P. J., filed a dissenting opinion, and deemed the majority opinion in conflict with Moss v. Fitch, 212 Mo. 484, and State ex rel. v. Blair, 238 Mo. 132. The cause was accordingly certified to this court. Both the opinions in the Court of Appeals and that of Judge SHIELDS of the trial court are found in 185 S. W. 221.

The suit was begun September 1, 1914. Successive writs of summons were returned "not-found."

On August 5, 1915, she filed an amended petition in which Walter Chapman, a brother of the original defendant, was made a party defendant. It alleged the necessary residence of the plaintiff in the city of St. Louis, and also alleged indignities, vagrancy, desertion and failure to support as the grounds for divorce. It also alleged that she was without means of support; that defendant purchased and paid for two pieces of real estate therein described, one in the city and the other in the county of St. Louis, and had the title thereto put in the defendant Walter Chapman, who paid nothing therefor, and who was holding the title in trust for Fred E. Chapman; that said Fred E. Chapman had absconded

and absented himself from his usual place of abode in this State, and had concealed himself so that the ordinary process of the law could not be served upon him; that defendant Walter Chapman was a non-resident of the State, and could not be served in this State in the manner prescribed by law. There was no allegation that the title to the land was put in Walter Chapman in fraud of plaintiff's rights. The prayer for relief was as follows:

"Plaintiff therefore prays for an order of publication against both defendants and that plaintiff be divorced from the bonds of matrimony contracted as aforesaid with the defendant, Fred E. Chapman, and that the court will adjudge to her permanent alimony in gross for her support and maintenance and alimony *pendente lite* and her attorney's fees and suit money and costs and enforce and establish the same as a lawful right, claim and demand to and against said real estate within the jurisdiction of this court, and enforce the performance of the judgment by sequestration of said property and such other lawful ways and means as is according to the practice of the court; that a receiver be appointed to take charge of said property, that the defendants be enjoined from selling or in any wise disposing of or encumbering or injuring said property, and that plaintiff be restored to her former name, Fannie P. Price, and make such further orders and judgments touching the premises as may be proper."

There was an order of publication, which was duly published, and which recited all the facts stated in the petition including the description of the real estate and the prayer for relief as made in the petition.

Both defendants made default. The evidence in every respect supported the allegations of the petition. The plaintiff's evidence was a pitiful narration of the brutal treatment, neglect and desertion of plaintiff by her husband. The evidence showed each of the properties to be worth something over $4000, with an encumbrance of $2000 on each, and that the title was put in Walter Chapman prior to the marriage of plaintiff with

Fred E. Chapman. The trial court found that the property belonged to Fred E. Chapman, and gave plaintiff a divorce, but refused a judgment for alimony, on the ground that the court had no jurisdiction on a constructive service to render a judgment for alimony.

The fact that the able jurists, including the trial judge, who have passed on this case are equally and radically divided prompts us to proceed with extreme caution.

It should be conceded that the jurisdiction of the courts in this State to hear and determine suits for divorce and alimony depends upon and is limited by the statutes. [Doyle v. Doyle, 26 Mo. 545; McIntire v. McIntire, 80 Mo. 470; State ex rel. v. Grimm, 239 Mo. 340.]

**Jurisdiction.**

II. On the other hand, the action for divorce and alimony, the defenses thereto, and the proceedings therein, are, as far as suited to our day, and situation, controlled by the law of the English ecclesiastical courts (common law with us) as modified, changed, or, in some matters, supplanted by our statutes.

**Law of Divorce.**

In Stokes v. Stokes, 1 Mo. 320, it was said: "The proceeding in this case is not a common law or chancery proceeding, but is a proceeding *sui generis,* founded on the statute. But as the statute makes use of terms used in the ecclesiastical courts, where alone divorces are prosecuted in England, we think the rules of that court should govern, as far as they may be applicable to our institutions in law."

In Twyman v. Twyman, 27 Mo. 383, SCOTT, J., who had then recently written the Doyle case, supra, held that condonation would defeat the action for divorce. The doctrine as to condonation comes from the ecclesiastical law (1 Bishop on Marriage and Divorce, p. 129), and not from our statute.

In State ex rel. v. St. Louis Court of Appeals, 99 Mo. 216, it was said: "Payment of such alimony may undoubtedly be enforced by execution and sequestration

of property. But the power of the court does not end
here. Though we have no ecclesiastical courts, still orig-
inal jurisdiction in divorce matters is conferred upon
the circuit courts; and since we have adopted the com-
mon law we have also adopted the English practice, so
far as it relates to the substantial rights of the parties,
except as the common law is modified by statute. [Mor-
ton v. Morton, 33 Mo. 614; Waters v. Waters, 49 Mo.
385; Crews v. Mooney, 74 Mo. 26; 1 Bishop on Mar-
riage and Divorce (6 Ed.), sec. 86.] Taking away priv-
ileges in the cause is sometimes resorted to to enforce
payment of alimony awarded pending the litigation. [2
Bishop on Mar. & Div. (6 Ed.), sec. 498; 1 Am. & Eng.
Ency. Law, 485-6; Walker v. Walker, 20 Hun, 400.]
It is said that the failure of the husband to pay alimony
will in extreme cases only justify the court in striking out
his answer; but when he is the plaintiff his failure or
refusal to obey such an order will warrant the dismissal
of the cause.''

This court in In re Gladys Morgan, 117 Mo. 249, said:
''The circuit court exercising ecclesiastical powers in di-
vorce proceedings is governed, as to the substantial rights
of the parties, by the common-law practice in such cases,
except as modified by statute law.''

Mangels v. Mangels, 6 Mo. App. 481, did *not* hold
that divorce is a strictly statutory proceeding, but did
say, l. c. 486, that the ecclesiastical law should be followed,
''having regard, of course, to the altered conditions of
things here, the spirit of our laws, and any modifications
introduced by statute.''

In Keller v. St. Louis, 152 Mo. 596, the plaintiff sued
as the mother of a minor child for personal injuries to
the child. The parents of the child had been divorced
by a decree which gave the mother the ''care and cus-
tody'' of the child, saying nothing about its maintenance.
It was held that as the duty of maintenance was on the
father, he alone could sue for injuries to the child. This
court then said:

''The statute provides that 'When a divorce shall
be adjudged, the court shall make such order touching

the alimony and maintenance of the wife, and the care, custody and maintenance of the children, or any of them, as from the circumstances of the parties and the nature of the case, shall be reasonable.' [R. S. 1889, sec. 4505.] Divorce as known to our law is the creature of statute, and the power the court has over the rights and liabilities of the husband and wife is to be measured by the terms of the statute. In the decree in this instance, no order was made 'touching the maintenance of the children.' The order made was limited to the 'care and custody' of the children, which were awarded to the plaintiff. So far as this decree is concerned, the duty of maintenance and the correlative right to the service of the children were left just where they were before the decree was entered, unless the order transferring the right of the husband to the care and custody of the children, to the wife, had the effect, *ex vi termini,* of transferring, to her, his duty of maintenance, with its reciprocal right to the services of the children.''

With all due respect, we suggest that though the statute was well applied to the facts in that case, yet, in so far as the language there used was broader than the facts called for, it was *obiter dictum,* and not in accordance with the well recognized law in this State. The same may be said of Creasey v. Creasey, 175 Mo. App. l. c. 241, where it was said: ''Divorce, with its incidents, is, in our State, entirely a statutory proceeding.'' No authorities are cited in either of those cases.

III. It follows as a necessary result from what is said above, that a proceeding for divorce and alimony is an action at law, unless our statutes have in some particular made it a proceeding in equity.

Law Action.

The first legislation in Missouri concerning divorce and alimony was the Act of May 13, 1807 (1 Ter. Laws, page 90). It allowed a jury trial at the request of either party. The Revised Statutes of 1825, p. 330, sec. 3, provided:

''Be it further enacted, That the circuit court sitting as a court of chancery, shall have jurisdiction in

all causes of divorce and alimony, or maintenance, by this act allowed; and the like process, practice and proceedings shall be had and pursued in all causes as are usually had and pursued in other causes on the equity side of said court, except that the answer of the defendant shall not be under oath.''

Section 6 of that revisory act provided for the rendition of the judgment for divorce and alimony, for the requirement of security for the payment of the alimony, for an execution to collect the same and for the enforcement of the judgment by the sequestration of property. That section was in all essentials the same as our present section 2375.

In the revision of 1855 (R. S. 1855, p. 663, sec. 4), the provision that the suit should be an equitable one and that the court should sit therein as a court of chancery was left out. By some oversight perhaps, the words in regard to the sequestration of property (an equitable process), were kept in the statute.

35 Cyc. 1386, sec. A, says:

''Formerly sequestration had its chief importance as a chancery remedy, a 'species of ''grand distress,'' ' whereby the property of a party, or of a corporation, was seized by officers of the court of chancery to punish contempts or to compel obedience to the order or decree of the court, final or interlocutory. Thus it issued to compel an appearance or an answer, especially against corporations, after fruitless resorts to writs of *distringas*. Before the use of the writ was authorized it had to be shown that imprisonment had failed to break the spirit of the party in contempt or, by a return of *non est inventus*, upon an attachment, that he could not be found. The court commonly named the persons, usually four, to take possession of and retain the personal property of the party in contempt and the revenues of his lands, until such time as the contempt should be purged. The modern abolition of imprisonment for debt has been construed to abolish sequestrations as processes to compel obedience to decrees for the payment of money; and in the case of decrees for the performance of acts

other than the payment of money the statutes providing for decrees by default upon failure of deféndant to appear or answer and for the issuance of execution, as in the case of judgments at law, upon decrees in equity; have deprived the writ of sequestration of practically all of its former importance in this phase. Indeed the authorities upon this branch of the law of sequestration are confined chiefly to the decisions of the English courts before the declaration of American independence, the subject having never assumed much practical importance in the United States generally in this aspect.''

In Coughlin v. Ehlert, 39 Mo. 285, it was held that a judgment for alimony is *simply an order for the payment of money.* It was there said: ''A writ of sequestration is a process for contempt; but it was said in Roberts v. Stoner, 18 Mo. 481, that 'a sequestration merely to compel the payment of money cannot now issue, as imprisonment for debt is now abolished.' '' McMakin v. McMakin, 68 Mo. App. 57, is to the same effect.

The fact that the trial in a divorce case is without a jury, and that the provision as to the sequestration of property is still printed in the statutes, may cause the casual observer to say that the proceeding is in equity. In Rosenfeld v. Stix, 67 Mo. App. 1. c. 586, it was said: ''A divorce suit is substantially one in equity.'' The contrary was held in the Mangels case, supra.

While it may be true that in a divorce case the court may be called on, incidentally, to decide collateral questions of equity jurisprudence, yet, in the light of the facts as they are, we must hold that, in this State, the suit for divorce and alimony is one at law and not in equity.

IV. In view of the law as above stated, it is hard to say that there is any vitality left in the statutory provision for a sequestration. But, granting that it may, in some circumstances, be of service, still it could not be in this case. On the facts as stated the property described is subject to execution on any valid judgment against the defendant.

**Sequestration.**

An execution would be as good as a sequestration at its best. Even if such sequestration is not invalid for all purposes, it would be useless in this case.

V. The appellant concedes that a judgment *in personam* for alimony on constructive service is void, but contends that by describing the property in the petition with a prayer for its sequestration in satisfaction of the alimony, and by the inclusion of all those things in the order of publication, the proceeding was made one *in rem* as to such property, and that a judgment in accordance with the prayer of the petition will be valid.

Lien against Property.

The appellant's brief says:

"If a defendant is not personally served and does not enter a voluntary appearance, a personal judgment cannot be rendered. Nevertheless, as the State has control over the marriage status of its inhabitants and also over property within its boundaries, in a suit for divorce and alimony, based on service by publication, the court may acquire jurisdiction to render a judgment *in rem* not only as to the marriage status, dissolving it, but also as to the property within the State, subjecting it to alimony award of the court, if the proper foundation is laid by the pleadings and the process."

There is just one mistake in that statement, and it is a vital one. The foundation must be laid deeper than the pleadings and process; it must be in the *law*. That brief cites Pennoyer v. Neff, 95 U. S. 714, where it is said:

"So the State, through its tribunals, may subject property situated within its limits owned by non-residents to the payment of the demand of its own citizens against them; and the exercise of this jurisdiction in no respect infringes upon the sovereignty of the State where the owners are domiciled. Every State owes protection to its own citizens; and, when non-residents deal with them, it is a legitimate and just exercise of authority to hold and appropriate any property owned by such non-residents to satisfy the claims of its citizens. It is in virtue of the State's jurisdiction over the property

266 Mo.—43

of the non-resident situated within its limits that its tribunals can inquire into that non-resident's obligations to its own citizens, and the inquiry can then be carried only to the extent necessary to control the disposition of the property. If the non-resident have no property in the State, there is nothing upon which the tribunals can adjudicate.''

We concede that to be true; and we will assume that the State can do as much in a suit brought against one of its own citizens who has absconded or who has absented or concealed himself so that the ordinary process of the law cannot be served upon him. But there is not in this State any law authorizing a proceeding against defendant's property for alimony on constructive service of process. The State has never exercised the power which it possesses in that respect. The courts cannot get such power until the State gives it to them by law.

The petition seems to regard the statutory provision for sequestration of defendant's property as authority for a proceeding *in rem* against such property. There are two reasons why that part of the statute cuts no figure in this case. We have seen that it is unconstitutional and void. Even if the statute in that respect is not void, the writ of sequestration cannot issue until after the judgment for alimony is rendered. Prior to such judgment the plaintiff is not entitled to any lien, nor to ''any lawful right, claim or demand to or against'' the property described in the petition, as required by section 1770 of the Revised Statutes authorizing orders of publication. The court is not authorized by the statute to make any order or decree with reference to any specific property. It can only render judgment for money as alimony.

Pennoyer v. Neff, supra, so much relied upon by the appellant, says (l. c. 727):

''The want of authority of the tribunals of a State to adjudicate upon the obligations of non-residents, where they have no property within its limits, is not denied by the court below; but the position is assumed, that, where

they have property within the State, it is immaterial whether the property is in the first instance brought under the control of the court by attachment or some other equivalent act, and afterwards applied by its judgment to the satisfaction of demands against its owner; or such demands be first established in a personal action, and the property of the non-resident be afterwards seized and sold on execution. But the answer to this position has already been given in the statement, that the jurisdiction of the court to inquire into and determine his obligations at all is only incidental to its jurisdiction over the property. Its jurisdiction in that respect cannot be made to depend upon facts to be ascertained after it has tried the cause and rendered the judgment. If the judgment be previously void, it will not become valid by the subsequent discovery of property of the defendant, or by his subsequent acquisition of it. The judgment, if void when rendered, will always remain void; it cannot occupy the doubtful position of being valid if property be found, and void if there be none.''

Bunnell v. Bunnell, 25 Fed. 214, involved the validity of a decree sequestering the property of the defendant in a suit for divorce and alimony. The bill for divorce alleged the grounds thereof, the ownership of the property in controversy and prayer for alimony out of the property of defendant. There was constructive service. The statute provided for the sequestration of defendant's property for the payment of the alimony. It was there said by Brown, J., afterward Mr. Justice Brown: ''The act makes no provision for proceeding against the property pending the suit for divorce, and the sequestration can only take place after the decree is rendered. If the wife were treated as having an inchoate lien upon the property for alimony, and were allowed to proceed as an attaching creditor when her bill is filed, the suit might then partake of the nature of a proceeding *in rem*, and a decree for alimony be enforced against the property itself.''

The Pennoyer case is there cited in support of that proposition.

We call attention to the majority opinion in the Court of Appeals herein. It says: "It is true that in the ordinary case it may be said that the remedies mentioned presuppose a personal judgment for alimony." It then gives moral and sentimental reasons why an exception to the general rule should be made in this case. Those reasons, strong as they are, have not as yet moved the Legislature to act, and the court cannot for such reasons make an exception where the law makes none.

We will now consider other cases which have been cited.

In Benner v. Benner, 63 Ohio St. 220, the statute provided for constructive service "in actions in which it is sought by provisional remedy to take, or appropriate in any way, the property of the defendant, when the defendant is a foreign corporation, or a non-resident of the State." Rhoades v. Rhoades, 78 Neb. 495, was based on a similar statute.

Wesner v. O'Brien, 56 Kan. 724, was for the recovery of a tract of land which had been adjudged to the wife as alimony in a divorce proceeding in which there was constructive service. The petition and order of publication described the land. There was a prayer that the land be adjudged to the plaintiff as alimony. The statute provided, "which alimony may be allowed to her in real or personal property."

Harshberger v. Harshberger, 26 Iowa, 503; Twing v. O'Meara, 59 Iowa, 326, and Rea v. Rea, 123 Iowa, 241, were based on a statute which authorized the court, in granting the divorce, "to enter such orders in relation to the property and maintenance of the parties as shall be right."

In all those cases cited from other states the statutes were so different from ours that the opinions of the courts thereon have no application here.

Hanscom v. Hanscom, 6 Colo. App. 97, was for maintenance of the wife without divorce, and sought, in aid of the suit, to have a fraudulent conveyance set aside. It was held that while a suit for divorce and alimony was one at law, the suit for maintenance alone was in equity.

But the court expressed its opinion as to what could be done both in a suit for divorce and alimony and in that for maintenance. It is said that in such suit for divorce and alimony a decree could be entered on constructive service binding the property of the defendant. In support of that proposition, it cited just three cases, Draper v. Draper, 68 Ill. 17; Wightman v. Wightman, 45 Ill. 167, and O'Callaghan v. O'Callaghan, 69 Ill. 552. An examination of those cases reveals the fact that, so far as appears, there was personal service on the defendant in all of them. For that reason it is impossible to regard those cases as authority for the ruling in support of which they were cited.

The court in the Hanscom case then proceeded to dispose of the question whether property could be reached in such suit for maintenance. It said:

"It is true, generally, that the holder of a legal demand must reduce his claim to judgment against the debtor, and in some way make it a lien upon the property sought to be reached, before he can institute proceedings to annul a conveyance made in fraud of his rights; but where the debtor has absconded, and cannot be reached by the process of the court, leaving behind him property, which, by reason of its situation or character, cannot be subjected to the payment of his liabilities in any proceeding at law, the creditor may resort to equity in the first instance, and in the same proceeding have his claim established, charged against the debtor's property, and all obstructions in the way of its enforcement removed. It is peculiarly the province of a court of equity to afford a remedy where the law affords none, and so, where the law is powerless to aid the creditor, by reason of the debtor's absence, and the situation of his property, equity will assume jurisdiction, adjudicate the claim, and, by acting upon the property itself, adjust the rights of all parties to the proceeding, and afford the appropriate relief. .[Scott v. McMillen, 1 Litt. 302; Kipper v. Glancey, 2 Blackf. 356; Peay v. Morrison, 10 Gratt. 149; Pendleton v. Perkins, 49 Mo. 565; Farrar v. Haselden, 9 Rich. Eq. (S. C.) 331; Greenway v. Thomas,

14 Ill. 271; Kamp v. Kamp, 46 How. Pr. 143.] In such a case the foundation of equitable jurisdiction is the inability of the law to enforce a legal demand; but where the debt or claim is not legal, but equitable, the jurisdiction does not depend upon adventitious facts, and is not affected by the presence or absence of the defendant.''

Pendleton v. Perkins, 49 Mo. 565, thus cited by the Colorado court, simply holds that where the debtor has absconded so that judgment cannot be obtained against him, and he has no property in the State subject to attachment, but has money in a city treasury belonging to him and not subject to garnishment under the statute, it may be reached by bill in equity, without a previous judgment at law, and without showing fraud or any other ground of equitable jurisdiction.

Wherever the law gives a certain remedy as against legal assets, i. e. assets which can be reached by the ordinary processes of the courts of law, then equity gives similar relief against equitable assets, which are beyond the reach of legal processes. In that matter it is said ''equity follows the law.'' But it is a perversion of that rule to hold that equity gives a remedy for anything as against equitable assets when the law gives none for the same thing as against legal assets.

The Colorado court did not determine the question whether the judgment for maintenance of the wife was such as could be made a charge against the legal assets of the husband. It took that for granted without deciding it. How came that court to make such an oversight? That opinion itself explains it thus:

''It may therefore be considered as established in this State that upon a proper case made, equity will award alimony, or separate maintenance, to a wife, in a proceeding where no divorce is sought. This seems to be conceded, but the contention, as we understand it, is that a claim for alimony apart from divorce involves only a personal liability against the husband, and cannot be made a charge upon his property in the first instance; so that, for the purpose of subjecting his prop-

erty to its payment, a prior personal judgment must be obtained against him. Upon our first examination of the case our views coincided with those of counsel. Our impression was that the court was without power, in this proceeding, to adjudge the amount which might be awarded to the plaintiff to be a charge upon specific property, and that as the principal defendant had not been personally served with summons, so that no judgment could be rendered against him, the suit must fail; but a more comprehensive and critical investigation has led us to a different conclusion; *and in view of the heartless conduct charged against him, and the serious hardship of the case if the plaintiff must be denied a remedy, we have not formed the opinion which we now entertain reluctantly.*" The italics are ours.

Murray v. Murray, 115 Cal. 266, is like the Hanscom case, and cites it as authority for the ruling.

Blackinton v. Blackinton, 141 Mass. 432, was brought by the wife for maintenance of herself and child. There was constructive service. No property of defendant was described in the petition. There was a judgment for the expenses of the suit and for a monthly allowance until further orders. On appeal, Holmes, J., now Mr. Justice Holmes, said:

"The whole proceeding is for the regulation of a status. The incidents of that status are various, some concerning the person, some concerning the support, of the petitioner or her child. The order to pay money is not founded on an isolated obligation, as in a case of contract or tort, but upon a duty which is one of those incidents. The status, considered as a whole, is subject to regulation here, although it involves relations with another not here, because such regulation is necessary rightly to order the daily life, and to secure the comfort and support, of the party rightfully living within the jurisdiction. It is quite true that these considerations may not suffice to give the decree extraterritorial force, and that, in general, courts do not willingly pass decrees, unless they think that other courts at least ought to respect them. But that is not the final test. We think that

the statute was intended to authorize such decrees as that appealed from, and tacitly to adopt the rules as to service expressly laid down for divorce. We do not see any sufficient ground for denying the power of the Legislature to pass the act. We are therefore of opinion that the decree was within the power of the court, and can be carried out against the defendant's property within the jurisdiction, and against his person if he be found here."

We fail to see how that case can be regarded as authority on the point under discussion here. There was no property described in the pleadings in that case. The judgment for alimony was upheld on the ground that such alimony was a part of the *res,* i. e., the status of the marriage relation, a proposition directly opposed to the doctrine of our Missouri cases, and of the almost unanimous rule of the courts of other States. [See, Ellison v. Martin, 53 Mo. 575; Moss v. Fitch, 212 Mo. 484; Anderson v. Anderson, 55 Mo. App. 268; Hedrix v. Hedrix, 103 Mo. App. 40; Stone v. Stone, 134 Mo. App. 242; Fleming v. West, 98 Ga. 778; Smith v. Smith, 74 Vt. 20; Lytle v. Lytle, 48 Ind. 200; Rea v. Rea, 123 Iowa, 241; Dillon v. Starin, 44 Neb. 881; Rigney v. Rigney, 127 N. Y. 408; Harding v. Alden, 9 Me. 140; Cooley's Const. Lim. (7 Ed.), p. 584.]

In Elvins v. Elvins, 176 Mo. App. 645, a case for alimony or maintenance without a divorce, just as was the Blackinton case, ALLEN, J., in a well considered opinion, cited the Massachusetts case, but did not follow it. Attention was there called to the fact that in the Rhoades case, supra, the Nebraska statute was very different from ours. It was there said: "It would seem, then, that the right to proceed *in rem* upon service by publication, in such an action, if at all, must be derived from the provisions of section 1770, supra." That section provides for orders of publication: "In suits in partition, divorce, attachment, suits for the foreclosure of mortgages and deeds of trust, and for the enforcement of mechanics' liens and all other liens against either real or personal property, and in all actions in law or in equity, which have for their immediate object the enforcement or es-

tablishment of any lawful right, claim or demand to or against any real or personal property within the jurisdiction of the court."

There is nothing in that section, nor in section 2375, in regard to the judgment for alimony, nor in both of those sections construed together, which authorizes a proceeding *in rem* against the property of the defendant. And that is true whether the provision as to sequestration of property be considered valid or void.

The fact that in the above cases of Ellison v. Martin, Moss v. Fitch and Elvins v. Elvins, the courts took a passing glance at this question without deciding it should not affect its present consideration.

We call attention to the fact that no relief was prayed against Walter Chapman; but, if there had been, the case would not be different for the reasons above given.

We do not want to be understood as holding that Walter Chapman has any place in this proceeding under any theory of pleading.

The judgment of the St. Louis Court of Appeals herein is reversed and that of the trial court is affirmed.

*White, C.,* not sitting.

PER CURIAM:—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All of the judges concur.