*May Term,*
*1855.*

WHITSELL
v.
MILLS.

----·-•◆•·----

## WHITSELL and Others *v.* MILLS.

The legal effect of a divorce is determined by the law in force when it was granted.

By the R. S. 1831, all divorces were *a vinculo matrimonii*, and either party, after the divorce was granted, could lawfully marry.

Dower, by the R. S. 1838, was substantially as at common law.

Where husband and wife are divorced *a vinculo*, the wife, after the husband's death, is not his widow.

The widow alone, at common law, is entitled to dower.

A husband was divorced from his wife, under the R. S. 1831, and died, while the R. S. 1838 were in force, seized in fee of land. *Held*, that the wife thus divorced was not entitled to dower.

APPEAL from the *Morgan* Circuit Court.

DAVISON, J.—*Sarah Mills*, on the 22d of *January*, 1852, filed her bill of complaint, having for its object the recovery of dower in certain tracts of land situate in *Morgan* county. It is alleged that she is the widow of one *Benjamin Mills*, deceased, who, during her coverture with him, was seized of said lands, and that the same are now owned by the appellants, who were the defendants below. The defendants answered, and filed a cross bill, to which the complainant filed her answer. The Court, upon a final hearing, decreed dower, &c.

From the pleadings and proofs, it appeared that the complainant's marriage with *Benjamin Mills* took place in *December*, 1824; that at the *April* term, 1832, he obtained

*Wednesday,*
*May 30.*

in chancery in the *Johnson* Circuit Court, a decree against his wife, the said *Sarah*, for a divorce, on the ground that she had abandoned him without cause, and had refused to return; and that his death occurred in the year 1840.

This divorce, it is said, defeats the present claim for dower. It was granted under a statute of 1831, which, after providing for a bill, &c., enacts that the Court, there appearing just cause, &c., shall render a decree declaring the plaintiff released from his or her husband and wife, and the other party shall be released from the marriage contract to all intents and purposes, as though the same never had been solemnized. R. S. 1831, p. 214. And by a subsequent enactment, approved *January* 30, 1833, all divorces granted prior to that date were confirmed. Acts of 1833, p. 33.

The legal effect of this divorce is, no doubt, to be construed with reference to the law in force at the time the decree granting it was rendered. That decree, it must be conceded, dissolved the marriage tie then subsisting between *Sarah Mills* and her husband. It released the parties wholly from their matrimonial obligations, completely annulled the contract of marriage, and left them in the same position in which they stood prior to its existence. In technical language, the decree was a "divorce *a vinculo matrimonii*," and either party, upon its rendition, was at liberty to enter into a new marriage contract.

Was the complainant, then, entitled to dower in the lands whereof her husband was seized during the coverture and prior to the divorce? The act concerning dower in force when *Mills* died, directs "that the widow of any decedent shall, in all cases," &c., "be endowed of one full and equal third part of the lands," &c., "the legal title to which vested in her husband," &c., "at any time during the coverture." R. S. 1838, p. 238. This is substantially the same as dower at common law. And "to the consummation of the title to such estate, three things are requisite, viz., marriage, seizin of the husband, and his death." 4 Kent's Comm., p. 35. It is true, the "husband was seized during the coverture;" but was she his widow? "One of the

essential elements of a dowable capacity is, that the claim-
ant should be the widow of the alleged husband." All the
provisions of law to be found in relation to this subject
speak of the "*widow*" as the only person entitled to dower.
The meaning of the term is, therefore, important. *Webster*
says, she is "a woman who has *lost* her husband by death."
This is the popular signification of the word, and, we think,
its legal meaning. But *Sarah Mills* lost her husband by
divorce, and not by death. According to the elementary
books, the marriage must continue until the husband's
death, and the claimant must be then his actual wife.
This being essential to constitute her his widow, if she be
divorced *a vinculo*, she shall not be endowed, for *ubi nul-
lum matrimonium ibi nulla dos.*   4 Kent's Comm. 36, 54.—
2 Blacks. Comm. 130. In *Reynolds* v. *Reynolds*, 24 Wend.
193, *Bronson*, C. J., says: "As to a divorce *a vinculo*, that
always put an end to dower; for although it was not ne-
cessary that the seizin should continue during the cover-
ture, it was necessary that the marriage should continue
until the death of the husband. It is only the widow
who is to be endowed. The marriage bond being severed
before his death, she is not his widow."

In the revision of 1838, it is provided that in certain
cases a divorce shall not bar dower; but that provision is
not applicable to the case before us. The dissolution of
the marriage contract took place in 1833. At that time,
her right to dower was merely inchoate, not consummate.
She was not then entitled to it; nor can she ever claim
it, because the decree annulled the marriage relation then
existing between the parties. After it passed, she was no
longer his wife, and therefore could not be his widow.

By the decree granting the divorce, the rights of the
parties, under the law then in force, were fixed, and they
remain unchanged. It follows she has no right of dower
in his estate. The present decree must be reversed.

*Per Curiam.*—The decree is reversed with costs. Cause
remanded, &c.

*D. McDonald*, for the appellants.

*R. L. Walpole*, for the appellee.