## MILLER *v.* CLARK and Others.

ALIMONY.—Arrears of alimony decreed by a court in favor of a divorced wife, under the statutes of this state, may be collected after her death by her administrator.

APPEAL from the *Warren* Circuit Court.

ELLIOTT, J.—*Richard D. Miller*, the appellant, filed a complaint in the court below to enjoin the collection of a balance unpaid, on a decree of alimony by the *Warren* Circuit Court, on the granting of a divorce in favor of his former wife, *Sarah Miller*, since deceased. A temporary injunction or restraining order was granted by the judge in vacation. The court afterward sustained a demurrer to the complaint, dissolved the temporary injunction, and dismissed the complaint; to all of which the plaintiff excepted, and appeals to this court.

The facts averred in the complaint are substantially these: At the *April* term, 1859, of the *Warren* Circuit Court, the said *Sarah Miller*, on a cross petition filed in said court for that purpose, obtained a decree of divorce against the plaintiff, and also a decree for $1,200 for alimony; to be paid in installments as follows: $200 on the 15th of *October*, 1859; $500 on the 15th of *October*, 1860; and $500 on the 15th of *October*, 1861. That on the

13th of *June,* 1863, there remained unpaid on said decree the sum of $568.27, besides the sum of $22 interest; that an execution was duly issued on said decree, directed and delivered to the defendant *Clark,* the sheriff of said county, commanding him, that of the property of the plaintiff subject to execution, he levy and collect the principal and interest then due, and all accruing interest, and the cost accrued and accruing; that after the said execution came into the hands of the sheriff—to-wit: on or about the 12th day of *July,* 1863—the said *Sarah Miller* departed this life; that the defendants were threatening to levy said execution upon the property of the plaintiff for the purpose of collecting the balance unpaid on said decree for alimony; that, as the said *Sarah* is deceased, the plaintiff is in no way bound to pay said amount for her support; that he has fully paid the proper officers all the costs and charges taxed against him in said cause; and that administration on the estate of said *Sarah* has been granted to said defendant, *Isaac Miller.*

It is also averred that the said *Sarah Miller,* from the date of said decree to the time of her death, continued sole and unmarried; that all her heirs are also the children and heirs of the plaintiff, including the said *Isaac Miller,* her administrator; that the said *Sarah* did not during her lifetime contract any debts for her subsistence and support. The complaint concludes with a prayer for a perpetual injunction against the collection of the balance unpaid of said decree for alimony.

The only question presented for the consideration of this court is, can arrears of *alimony* decreed by the court in favor of a divorced wife, under the statute of this state, be collected after her death by her administrator?

It is earnestly insisted, on behalf of the appellant, that the decree of *alimony* is personal to the wife; that it is intended as an allowance for her support and maintenance during her life, and the right to enforce its payment dies with her.

*Bouvier*, in his Law Dictionary, (1 vol., 2 ed., p. 99,) says that "*alimony* is the maintenance or support which a husband is bound to give to his wife upon a separation from her, or the support which either father or mother is bound to give to his or her child, though this is more usually called maintenance."

"In case of a divorce *a mensa et thoro*, the law allows *alimony* to the wife, which is that allowance which is made to a woman for her support out of the husband's estate, being settled at the discretion of the ecclesiastical judge, on consideration of all the circumstances of the case." 1 Blacks. Com. 441. At common law "there are two kinds of divorces: the one total, the other partial; the one *a vinculo matrimonii*, the other merely *a mensa et thoro*. The total divorce *a vinculo matrimonii*, must be for some of the canonical causes of impediment existing before the marriage; for in cases of total divorce the marriage is declared null, as having been absolutely unlawful *ab initio.*" "Divorce *a mensa et thoro* is where the marriage is just and lawful *ab initio*, and therefore the law is tender of dissolving it; but, for some supervenient cause, it becomes improper or impossible for the parties to live together, as in case of intolerable ill-temper," etc. "For the canon law, which the common law follows in this case, deems so highly and with such mysterious reverence of the nuptial tie, that it will not allow it to be unloosed for any cause whatever that arises after the union is made." 1 Blacks. Com. *id.*

A divorce *a mensa et thoro* does not dissolve the marriage relations between the parties; it grants a mere separation for the time, leaving all the other marital rights and obligations still subsisting between the parties as husband and wife. The husband is still bound for the support and maintenance of the wife; and the ecclesiastical courts, in decreeing such separation, and as incident thereto, decree to the wife *alimony*, or an allowance out of the husband's estate, for her support and maintenance

during the separation. Ordinarily, it is the allowance of such a sum annually as the judge may deem reasonable and just, on consideration of all the circumstances of the case. Such a decree of separation may be terminated by a reconciliation of the parties; they may, in their own mutual discretion, reunite at pleasure; indeed, it is the policy of the common law that they should do so; and to that end the door is ever left open, while the parties are held firmly by the indissoluble matrimonial tie, as an inducement, from necessity, to a reconciliation.

This rigid rule, it is admitted, is productive of great hardship and much unhappiness in many cases, and has been widely departed from in many of the *American* states; yet by many it is claimed to be supported by the soundest principles of public policy and good morals.

The Ecclesiastical Court, not possessing adequate power to enforce the payment of decrees for alimony, courts of equity lend their aid for that purpose. *Story*, in discussing the power and jurisdiction of the latter courts over the subject, says: "However, it has been recently held in *England*, that no bill ought to be maintained in equity, to enforce any decree for alimony in the Ecclesiastical Court after the death of the wife. The reason is suggested to be, that alimony is the proper and exclusive subject for the discussion in the Ecclesiastical Court, whose province it is to determine what ought to be the amount, for how long it is to be granted, and what operates to discharge it." 2 Story's Eq. Jur., sec. 1425, and see note 2, in which reference is made to the case of *Stones* v. *Cooke*, 8 Sim. 321, note, in which it said "that the claim must cease with the death of the wife."

Admitting, then, that at common law a claim for *alimony*, allowed by the Ecclesiastical Court in granting a divorce *a mensa et thoro*, must cease with the death of the wife, and which is conceded by the appellee, it remains to be considered whether the same rule applies in this state

to allowances for *alimony* made by the courts in granting divorces under the provisions of our statute.

The 7th section of the act regulating the granting of divorces by the courts of this state (2 G. & H. 350) enacts, that "divorces shall be decreed upon the application of the injured party, for the following causes: 1. Adultery. 2. Impotency. 3. Abandonment for one year. 4. Cruel treatment of either party by the other. 5. Habitual drunkeness, or the failure of the husband to make reasonable provision for his family. 6. The conviction subsequent to the marriage of either party of an infamous crime. 7. Any other cause for which the court shall deem it proper that a divorce shall be granted." The statute also provides that a divorce decreed on account of the misconduct of either party shall entitle the other to the same rights, so far as his or her real estate is concerned, that he or she would have been entitled to by the death of the party in default. It is also made the duty of the court, in decreeing a divorce, to make provision for the guardianship, custody, support, and education of the minor children of such marriage. And the 23d section enacts that "the divorce of one party shall fully dissolve the marriage contract as to both."

It thus appears that the statute has abolished, in this state, the common law divorce *a mensa et thoro,* or a mere separation of the parties from "bed and board," in which alimony was allowed at common law, and has substituted therefor a total dissolution of the marriage contract, and a restoration of the parties to their respective rights, at least as to their future conduct and relations, as though the marriage had never existed. It is, in legal effect, a divorce *a vinculo matrimonii,* and either party, upon its rendition, is at liberty to enter into a new marriage contract. See *Whitsell et al.* v. *Mills,* 6 Ind. 229; *Chenowith* v. *Chenowith,* 14 Ind. 2.

It is also to be observed that the statute authorizes the granting of divorces, dissolving the marriage contract, not

only for the same causes for which a mere separation might be decreed at common law, but for several other specific causes, to which is also added the still more sweeping provision of " *any other cause for which the court shall deem it proper that a divorce should be granted.*"

In view of these enactments, it must be admitted by all that the statute has radically changed the whole policy of the common law in regard to divorces. It has abrogated and stricken down that policy from which the common law " deemed so highly and with such mysterious reverence the nuptial tie, as not to allow it to be unloosed for any cause whatever that arises after the union is made." It establishes, in fact, a contrary policy, and with great liberality allows a total dissolution of the marriage contract in almost every case where the union has failed to be productive of mutual affection and happiness.

To vindicate the policy of the law is no necessary part of the duty of the court. Whether the statute referred to is founded in wisdom and sound policy or otherwise, is for the legislature and not the court to determine; it is simply the duty of the latter to pronounce and administer the law as it is found to exist, leaving it to the law-making power to change it if it shall be ascertained to operate injuriously.

The provisions of the statute in reference to alimony, or the allowance to the wife on the rendition of a decree of divorce, are as follows:

"Section 19. The court shall make such a decree for *alimony*, in all cases contemplated by this act, as the circumstances of the case shall render just and proper."

"Section 22. The decree for alimony to the wife shall be for a sum in gross, and not for annual payments; but the court, in its discretion, may give a reasonable time for the payment thereof by installments, on sufficient security being given."

Now, when it is remembered that the statute has abolished divorces *a mensa et thoro*, in which alone, under the

common law, alimony was decreed, and has destroyed one of the principal characteristics of alimony at common law, by providing that the allowance shall be for a sum in gross, and not for annual payments; and that it has substituted divorces wholly dissolving the marriage contract, and restoring the parties to their original rights and to their separate real estate; and when it is recollected that whatever personal property the wife may have brought to the husband on the marriage, and not retained as her separate property, or however much property may have been accumulated by their joint care and toil, and to which she may have contributed in a large degree, it is all held by the husband on the dissolution of the marriage, and the wife is barred from any future claim on him or his estate; in a word, in view of all the provisions of the statute, when considered and construed together, is it not manifest that the legislature intended that, upon granting the divorce, the court, under the authority to decree *alimony* to the wife, should make a just and equitable settlement between the parties of their marital relations, in view of all the circumstances of that relation, and of the property of the parties, and their joint labors in the accumulations during the marriage; and that the sum so given to the wife should thereupon become her absolute property, as upon an equitable partition between them? Such, it seems to us, is the reasonable and proper interpretation of the statute.

The allowance so authorized is named *alimony* in the statute; but it is not the alimony of the common law, the right to which ceased to exist or reverted to the husband on the death of the wife, resulting from the fact that the marriage relation continued to exist until her death. But it is *alimony* under, and the creature of, the statute, given upon an equitable settlement between the parties upon the dissolution of the marriage, and of all the relations of husband and wife theretofore existing between them. The reason for the rule at common law does not exist under

the statute, and the rule itself should not therefore be applied.

The demurrer to the complaint was properly sustained, and the judgment therefore must be affirmed.

The judgment of the Circuit Court is affirmed, with costs.

Justice *Gregory* did not sit in this case.

*J. H. Brown* and *William P. Rhodes*, for appellant.

*J. McCabe*, for appellee.