## OLIVE MAY NELSON, Appellant, v. JAMES ANDREW NELSON.

### In Banc, May 18, 1920.

1. **ALIMONY: Revivor: Subsequent Modification.** A judgment in a proceeding by *scire facias* to revive a former judgment for alimony definitely and finally negatives every defense that might and should have been raised against the action.

2. **SCIRE FACIAS: Defenses.** The only defenses available to a defendant in an action to revive a judgment by *scire facias* are either (1) that there is no such judgment, or (2) that some fact has come into existence since its rendition that operates to discharge it, such as payment or release.

3. **ALIMONY: Remarriage: Scire Facias: Subsequent Modification.** Remarriage by the divorced wife does not *ipso facto* dissolve her former husband from his obligation to pay alimony, but the judgment therefor stands in full force until modified by the court pronouncing it; but the fact of her remarriage cannot be asserted as a defense in a proceeding by *scire facias* to revive her former judgment of alimony, and he is not concluded by his failure to plead her remarriage as a defense to that proceeding, and consequently he can subsequently file his motion to have the judgment modified on the ground that the wife married again after her divorce decree, and in the absence of countervailing evidence is entitled to have said judgment annulled as to future payments.

4. **ALIMONY: Modification: Statute: How Construed.** The statute (Sec. 2375, R. S. 1909) declaring that "the court on application of either party may make such alteration from time to time as to

Nelson v. Nelson.

the allowance of alimony as may be proper," must, in order to determine whether there are any limitations circumscribing the power of the court to modify its judgment allowing alimony, be read in connection with the entire statute on the subject of divorce and alimony, and the whole considered with reference to the ecclesiastical law, which it modifies, changes and in some particulars supplants.

5. ———: ———: ———: **Ecclesiastical Law: Distinction.** There is a material and important distinction between the alimony known to the ecclesiastical law and the alimony provided by the statute. The former was incident to and dependent upon an existing and continuing valid marriage, ceased with the death of either party, and was decreed to a wife, not as her separate property or estate, but only for her maintenance; statutory alimony is given only upon a dissolution of the marriage, takes its character from the annullment of the marriage contract as an incident thereto, and is an allowance of such a sum of money as will fairly and reasonably compensate the wife for the loss of her support, and in a limited sense is an assessment of damages for her huband's breach of the contract. The provision for alteration in the amount, and the other that it may be decreed from year to year, as well as in gross, do not alter the fact that alimony is essentially compensation, but only afford opportunity to adjust the wife's loss to variant or new conditions.

6. **JUDGMENT FOR ALIMONY: Modification: Remarriage.** A judgment for alimony, whether in gross or from year to year, is a debt of record in an action at law, is enforceable by execution, is *res adjudicata* as to all conditions or facts existing at the date of its rendition, and the wife is entitled to avail herself of all remedies given to other judgment creditors; being such, being in its essence compensation awarded in redress of a legal injury, being a property right which vests as the installments accrue, the court rendering it has no power subsequently to impair or destroy it without the wife's consent. As to past installments unpaid, it cannot be annulled on the ground that the wife, since it was rendered, has again married. [Disapproving Francis v. Francis, 192 Mo. App. 710.]

7. ———: ———: **Prospectively Only: Remarriage: Abandonment.** The statute (Sec. 2375, R. S. 1909), providing that "the court on application of either party may make such alteration from time to time as to the allowance of alimony as may be proper," operates only prospectively, and the court cannot modify or alter a judgment for alimony so as to annul past-due installments, without the wife's consent, whether or not, since the judgment was rendered, she has again married. The judgment, as to all unpaid

Nelson v. Nelson.

past-due installments, is unalterable, as is any other judgment in an action at law; but, upon the husband's application, the judgment may be modified as to future installments, and if the wife has again married, she should be held to have abandoned the alimony, for the support contracted for by her subsequent marriage, and the judgment as to future installments should be annulled.

Appeal from the Jackson Circuit Court.—*Hon. O. A. Lucas*, Judge.

AFFIRMED in part; REVERSED in part.

*Jas. C. Rieger* and *W. C. Hock* for appellant.

(1) Respondent is estopped by the judgment of revival upon *scire facias* from now asserting any matters which could have been raised or asserted. Wood & Oliver v. Ellis, 10 Mo. 382; Ellis v. Jones, 51 Mo. 187; George v. Middough, 62 Mo. 551; Walsh v. Bosse, 16 Mo. App. 238; State v. Woerner, 33 Mo. 216; 35 Cyc. 1154, 1159-1160. (2) Appellant's remarriage did not *ipso facto* dissolve the obligation to pay alimony. Stillman v. Stillman, 99 Ill. 196; Cole v. Cole, 142 Ill. 19; Craig v. Craig, 163 Ill. 176; Gordon v. Baker, 182 Ill. App. 587; 14 Cyc. 787; King v. King, 38 Ohio St. 370. (3) Modification of judgment for alimony can be made only upon application by one of the parties. R. S. 1909, sec. 2375. (4) Past installments are a vested right and the court cannot make an order retroactive. Craig v. Craig, 163 Ill. 176; Dreyer v. Dickman, 131 Mo. App. 660; Meyer v. Meyer, 91 Mo. App. 151; Chester v. Chester, 17 Mo. App. 657; Deidesheimer v. Deidesheimer, 74 Mo. App. 236; West v. West, 94 Mo. App. 683. (5) Respondent having paid none of the installments does not come into court with clean hands. Cole v. Cole, 142 Ill. 19.

*Frank M. Lowe* for respondent.

(1) A writ of revival is not a new suit, but the continuation of an old one. Peak v. Peak; 181 S. W.

394; Hudson v. Wright, 204 Mo. 412; Goddard v. De-
laney, 181 Mo. 578; Sutton v. Cole, 155 Mo. 206. (2)*
The allowance was made to plaintiff for support and
maintenance only. Brandt v. Brandt, 40 Ore. 477, 67
Pac. 508; Bowman v. Worthington, 24 Ark. 538; Still-
man v. Stillman, 99 Ill. 196; Cole v. Cole, 142 Ill. 19.
(3) Upon plaintiff's remarriage, the allowance for sup-
port and maintenance should cease. Brandt v. Brandt,
40 Ore. 477; Bowman v. Worthington, 24 Ark. 538;
Stillman v. Stillman, 99 Ill. 196; Brown v. Brown, 38
Ark. 328; Morgan v. Lowman, 80 Ill. App. 558; South-
worth v. Southworth, 47 N. E. 93; Costeel v. Costeel,
38 Ark. 477; Francis v. Francis, 179 S. W. 980, 192
Mo. App. 710; 1 R. C. L. p. 950. (4) Plaintiff has a vested
right only in the payments accruing up to the time of
her second marriage. Morgan v. Lowman, 80 Ill. App.
558; Franck v. Franck, 107 Ky. 362, 54 S. W. 195.

RAGLAND, C.—On the 19th day of January, 1903,
appellant secured in the Circuit Court for Jackson
County a decree of divorce from respondent, wherein
she was awarded alimony from year to year, payable
in monthly installments of thirty-five dollars, beginning
on the 20th day of January next ensuing. On the 23rd
day of August, 1904, she was remarried to one Wallace,
from whom she later obtained a divorce and the res-
toration of her former name of Nelson. Respondent
never paid a single installment of the alimony and the
record does not disclose that the appellant ever took
any steps to enforce her judgment therefor. However, on
the 9th day of January, 1913, she began proceedings
to revive the judgment by *scire facias.*. Respondent
appeared and filed an answer in which he alleged in
substance that he had paid all sums due from him to
appellant. A hearing was had in October, 1914, and
a judgment of revival was rendered. February 29th,
1916, respondent filed a motion alleging the remarriage
of appellant and asking the court on that ground to
so modify the judgment that he would be relieved of

the payment of all installments of alimony accruing after the date of the remarriage. No pleading of any kind was filed in opposition. The hearing on the motion to modify was had at the March term, 1916. The evidence heard consisted of the record of the proceedings hereinbefore referred to and the admission by appellant of her remarriage and subsequent divorce. The court took the matter under advisement until the May term, 1916, and on the 20th day of May, during said term, the motion was sustained, and judgment entered setting aside the original judgment as revived, in so far as it provides for the payment of alimony from and after August 23, 1904, the date of appellant's remarriage. Appellant was allowed an appeal to the Kansas City Court of Appeals, where a decision was rendered, but that court deeming its decision contrary to a previous decision of the St. Louis Court of Appeals, certified the cause to this court for determination.

This appeal presents but two questions for consideration. First, whether respondent, inasmuch as he did not plead appellant's remarriage in his answer to the *scire facias* in the revivor proceeding, is not now concluded in that respect; and, second, whether the court had the power under the statute to so modify the judgment for alimony as to vacate and annul the same as to the installments that had accrued prior to the entry of the order of such modification. We agree with the conclusions of the Kansas City Court of Appeals and generally with its reasoning in support thereof, but inasmuch as the St. Louis Court of Appeals has reached a different conclusion on the proposition involved in the second question above, it is deemed proper to state somewhat more at length the grounds of the decision than appears in the opinion of the Kansas City Court of Appeals.

I. Appellant's first contention invokes the familiar rule, that a valid judgment for the plaintiff definitely and finally negatives every defense that might and

should have been raised against the action.
**Issues Settled.** If respondent could have pleaded appellant's remarriage in response to the *scire facias* as a showing of sufficient cause why the judgment against him should not be revived, such plea is unavailing to him in this proceeding. It is well settled that as far as the merits are concerned there are in a **Remarriage.** general way but two defenses available to the defendant in an action to revive a judgment by *scire facias*. One is that there is no such judgment, and the other, that some fact has come into existence since its rendition that operates to discharge it, payment, release, or some other. So that the only question in this connection is whether appellant's remarriage operated *ipso facto* to dissolve respondent's obligation to pay alimony and thereby discharged the judgment therefor. The decree adjudging the alimony does not so provide, neither does the statute. Absent such a provision in either the one or the other, the general law must be looked to. The question of the effect of remarriage by a divorced wife on the judgment awarding her alimony seems never to have been passed on by the appellate courts of this State. There is, however, an abundance of authority elsewhere from which the general rule may be deduced that such remarriage has no direct effect upon the judgment for alimony. It merely affords a basis upon which the court, upon the application of the former husband, may modify or annul it. [11 Ann. Cas. 523.] The doctrine of the cases supporting this rule seems to be that where a wife obtains a divorce and afterwards remarries, and the husband of such second marriage is not able to support her in the position of life to which she is accustomed, the court will consider such circumstances, and while it will not order such payments of alimony shall cease, may reduce the amount. In such cases the burden is on the wife to show that her second husband is not able to support her, and where she introduces no evidence on this point it will be presumed that he is

282 Mo.—27

abundantly able to fulfill his marriage obligations. [Southworth v. Treadwell, 168 Mass. 511, 47 N. E. 93.] Whether the holding of these cases, in so far as they hold that a divorced wife on remarriage is still entitled to payments of alimony from her former husband in a reduced amount, or in any amount whatever, is in accord with sound public policy and good morals is doubtful. A better view would seem to be that the divorced wife by remarriage abandons the provision made for her support out of the estate or earnings of her former husband, as embodied in the judgment for alimony, for that adequate support for which she contracts by the subsequent marriage. Treating alimony, as on principle should be done, as the equivalent of that obligation for support which arises in favor of the wife out of the marriage contract, and which is lost when that contract is annuled, she obtains the same obligation for support by a second marriage, and it is unreasonable and illogical, as well as unseemly, that she should have both at the same time. She would therefore in such circumstances be held to have abandoned the alimony for the support contracted for by the subsequent marriage, and, having once done so, the obligations against the former husband cannot be revived upon the death or divorce of the subsequent one. But it is not necessary for us to pass upon this particular phase of the subject on the facts of this case. On the trial respondent proved the remarriage, and appellant offered no evidence touching the inadequacy of the support furnished by her second husband during the continuance of that marriage, or of the alimony, if any, decreed her on her divorce from him. We do hold, however, that remarriage does not *ipso facto* dissolve the obligation to pay alimony. Under the statute the judgment therefor stands in full force unless and until modified by the court pronouncing it. The court can act in that behalf only when application therefor is made by one of the parties, and in such proceeding the fact of remarriage at least must be judicially determined. It follows that the fact of appellant's remarriage could not have been asserted

Nelson v. Nelson.

as a defense in the revivor proceeding. We further hold on this phase of the case that respondent in proving the remarriage made a prima-facie case, which, in the absence of countervailing evidence of the character heretofore indicated, entitled him to have the judgment annuled at least as to future payments of alimony.

II. The second question for decision is whether the trial court was authorized to so modify the judgment as to entirely wipe out the installments that had accrued after the second marriage and prior to the entry of the order of such modification. This in-volves a more definite construction, or rather interpretation, of Section 2375, Revised Statutes 1909, which among other things, provides that "the court on application of either party may make such alteration from time to time as to the allowance of ali-mony . . . as may be proper." Because of the unique character of the action for divorce and alimony such interpretation is not without difficulty. "The ac-tion, the defenses thereto, and the proceedings therein, are, as far as suited to our day and situation, controlled by the law of the English Ecclesiastical Courts (com-mon law with us) as modified, changed, or, in some mat-ters, supplanted by our statutes." [Chapman v. Chap-man, 269 Mo. 663, 668.] To determine, therefore, wheth-er there are any limitations which circumscribe the pow-er of the court to modify its judgments expressly given by Section 2375, that section must be read in connection with the entire statute on the subject of divorce and ali-mony, and the whole considered with reference to the ecclesiastical law which it modifies, changes, or in some 'particulars supplants. "All statutes, these alimony ones constituting no exceptions, are to be interpreted not as isolated and independent directions or rules, but as additions to the prior written or unwritten laws, which to a due extent they modify and control, and by which in turn they are themselves modified and con-trolled. [2 Bishop on Marriage, Divorce and Separation, sec. 1040.] Another rule of statutory interpretation is

*Annullment of Judgment.*

that a legal term employed in a statute is as far as possible to be given its already established meaning. So that the alimony provided by the statute should, so far as conformable both to the letter and the spirit of the statute as a whole, be deemed to be of the same nature as the alimony of the unwritten law. There is a distinction, however, between the alimony known to the ecclesiastical law and that provided by the statute. The former was incident to and dependent upon an existing and continuing valid marriage, while the latter is given only upon its dissolution. This distinction should be kept in mind, for it differentiates the two in essential attributes. Under the canonical law administered by the ecclesiastical courts marriage was a religious sacrament and no English court had jurisdiction to dissolve it for a post-nuptial cause. The divorce granted by these courts was from bed and board, a mere judicial separation. The relation of husband and wife continued, the door of reconciliation was left open, and they could resume their former status of their own accord without any civil or religious ceremony of any kind or character. As the marriage relation continued, the husband was in no wise disturbed either in his title to the property brought to the marriage by the wife, or in his possession thereof, but he was still under the duty to afford her support according to his means and station in life. Hence, alimony was allowed and enforced as support due from husband to wife during their legal separation. This was the theory and origin of alimony under the unwritten law. Consequently, alimony decreed the wife continued only during the joint lives of herself and her husband. Upon the death of either it was at end. Even unpaid arrearages upon the decease of the wife could not be collected by her personal representatives, but reverted to the husband, though her creditors could in equity have such arrearages impressed in their favor to the amount of the support furnished the wife by them. During the life of the wife the arrearages of alimony of long standing were lost to her

if no attempt had been made to collect them. As the ecclesiastical courts had no means of enforcing their decrees for the award of alimony it was necessary for the wife to appeal to the court of chancery to compel payment. Ordinarily the chancellor would refuse relief as to all arrearages extending back more than one year. This was because alimony was not decreed to a wife as her separate property or estate, but for her maintenance only. If she permitted it to become in arrears for more than one year without making application to enforce a monition for its payment, it was presumed that it was not needed by her for support, and hence it would be inequitable to burden her husband with the payment thereof.

If the courts of this State have the authority to modify judgments for permanent alimony to the extent of cancelling or annulling accrued unpaid installments thereof, it must be because our statute merely adopts the ancient chancery practice above referred to with the legal theories and their logical sequences which it effectuated. On the contrary, many of those theories by the spirit of our times and of our institutions, and by force of the statute itself, have become obsolete. Under the laws of this State marriage is not a sacrament but a contract. Divorce is not merely a legal separation but absolute dissolution of the marriage tie. Through the decree rendered in the action, the contract of marriage is fully discharged as to both parties thereto for the breach by one. The permanent alimony allowed by the statute as an incident thereto takes character accordingly. In other words, it is not a continuing of the support of the wife by the husband, but it is the allowance of such a sum of money in gross or in installments as will fairly and reasonably conpensate her for the loss of her support by the annulment of the marriage contract. In this limited sense at least it may be deemed an assessment of damages in her favor for breach of the contract by her husband. Following the rule of statutory interpretation heretofore premised, the ele-

ments that enter into and make up the measure of such damages are for all practical purposes, and on principle should be, determined by the same considerations that determined the amount of alimony under the unwritten law, the prior treatment of the spouses respectively of each other, the needs of the wife, the "faculties" of the husband, etc. But the essential nature of statutory alimony is not support furnished by an unwilling husband to his wife on the compulsion of a court of chancery, but compensation for the loss thereof adjuged her in an action at law. [Chapman v. Chapman, supra.] The fact that alimony may be decreed from year to year, as well as in gross, does not militate against the idea that it is essentially compensation. If the husband has no property, his future earning capacity must be utilized to meet his obligation. In such a case a judgment in gross might defeat the very purpose to be attained. Nor does the further fact that the court may make such alterations in the amount allowed, from time to time as may be proper, so militate. The provision merely affords the opportunity from time to time as new conditions arise to more exactly determine the extent of the loss suffered by the wife. If she minimizes and entirely recoups the same by remarriage, her compensation can, and should be accordingly reduced.

A judgment for alimony whether in gross or from year to year is a debt of record as much as any other judgment for money. The wife is a judgment creditor and as such is entitled to avail herself of all the remedies given to judgment creditors. [1 R. C. L. p. 951, sec. 97.] In this State such a judgment is a judgment in an action at law, secured by statutory liens, enforceable by execution, and becomes dormant after the lapse of the statutory period of ten years unless revived. In fact it is subject to the same incidents as judgments in other action at law. [Chapman v. Chapman, supra; Biffle v. Pullam, 114 Mo. 50; Dreyer v. Dickman, 131 Mo. App. 660; Hauck v. Hauck, 198 Mo. App. 381.] Not only are judgments for alimony from year to year

subject to the same incidents as judgments in other actions at law, but like them are *res adjudicata* as to all conditions or facts existing at the date of their rendition. [Deidesheimer v. Deidesheimer, 74 Mo. App. 234.] As to the state of the case existing when entered, they are final and can not be set aside or annulled, except for mistake or fraud as in the case of other judgments. The husband has the right to act in reliance on the finality of the award determining the extent of his obligations. (R. C. L. p. 948, sec. 94 ), and it follows as of course that the wife has a correlative right.

As a judgment for alimony from year to year is subject to the same incidents as other judgments rendered in action at law, and as it is in its essence compensation awarded in redress of a legal injury, it must be held on principle that the wife has therein, as she would have in any other money judgment rendered in her favor, a property right which vests as the installments accrue. It follows that the court rendering such judgment has no power subsequently to impair or destroy a right so vested without the wife's consent. [Craig v. Craig, 163 Ill. 176; Miller v. Clark, 23 Ind. 370; O'Hagan v. O'Hagan's Exr., 4 Iowa (Clark) 509; Gordon v. Baker, 182 Ill. App. 587; In re Estate of Bell, 210 Ill. App. 350; In re Nowell, 99 Fed. 1. c. 934; Note 2 L. R. A. (N. S.) 242.] In the case of Sistare v. Sistare, 218 U. S. 1, 54 L. Ed. 905, the Supreme Court of the United States in discussing the power of the courts of the State of New York to modify retroactively past due installments of alimony under a code provision of that State similar to ours, says at page 912:

"But it is equally certain that nothing in this language expressly gives power to revoke or modify an installment of alimony which had accrued prior to the making of an application to vary or modify, and every reasonable implication must be resorted to against the existence of such power, in the absence of clear language manifesting an intention to confer it. The implication, however, which arises from the failure to expressly

confer authority to retroactively modify an allowance of alimony is fortified by the provisions which are expressed. Thus, the methods of enforcing payment of the future alimony awarded, provided by the statute, all contemplate the collection and paying over as a matter of right of the installments as they accrue, as long as the judgment remains unmodified, or, at least, until application has been made or permission to make one in pursuance to the statute has been accorded. And the force of this suggestion is accentuated when it is considered that it was not unusual in New York to resort to executions as upon a judgment at law to enforce the collection of unpaid installments of alimony. [Wetmore v. Wetmore, 149 N. Y. 520, '527, 33 L. R. A. 708, 52 Am. St. 752, 44 N. E. 169.] Indeed, as in principle, if it be that the power to vary or modify operates retroactively and may affect past due installments so as to relieve of the obligation to pay such installments, it would follow, in the very nature of things, that the power would exist to increase the amount allowed, it is additionally impossible to imply such authority in the absence of provisions plainly compelling to such conclusion. Beyond all this, when it is considered that no provision is found looking to the repayment by the wife of any installments which had collected from the husband, in the event of a retroactive reduction of the allowance, it would seem that no power to retroactively modify was intended.''

The reasoning of that case is wholly applicable in this.

To say that a judgment for alimony, in respect to past due and unpaid installments, is a judgment and fixed debt, unless and until altered, is to say that it is not fixed at all, and on such hypothesis the judgment in that respect would be interlocutory and not final as a matter of course. Solely for that reason, judgments for alimony, rendered in those forums that exercise the power to modify them retroactively, are not under the protection of the full faith and credit clause of the

Federal Constitution, and suit can not be maintained on past due installments thereof in the courts of sister states. [Sistare v. Sistare, supra.] For the same reason unpaid over-due installments under the judgments of such courts are not provable in courts of bankruptcy. [In re Nowell, supra.] If not otherwise impelled thereto, we would be constrained to hold for reasons of public policy alone that the courts of this State have no power to revoke or modify an installment of alimony which has accrued prior to the making of an application therefor. The case of Francis v. Francis, 192 Mo. App. 710, to the extent that it holds the contrary is hereby overruled.

The judgment of the trial court in this case, in so far as it annuls and cancels the payments of alimony after February 29, 1916, is affirmed; in other respects it is reversed. *Walker, C, J.,* and *Williams, Goode* and *Williamson, JJ.,* concur; *Blair, Woodson* and *Graves, JJ.,* dissent.