HELEN G. MAYES, now HELEN G. ZORN, Appellant, v. OSCAR L. MAYES.—116 S. W. (2d) 1.

Division Two, May 3, 1938.

402

*Chas. F. Keller* and *S. P. Reynolds* for appellant.

*Sherman & Sherman* for respondent.

COOLEY, C.—This is an appeal from a judgment of the Circuit Court of Buchanan County quashing an execution issued out of that court in a case wherein Helen G. Mayes, appellant, was plaintiff and respondent Oscar L. Mayes was defendant. The case was appealed to the Kansas City Court of Appeals where, by a divided court, the judgment was reversed and the cause remanded. The appellate court, because of conflict between its decision and prior decisions of the St. Louis Court of Appeals, certified the case to this court. Said decision of the Kansas City Court of Appeals is reported in Mayes v. Mayes, 104 S. W. (2d) 1019.

Prior to May 7, 1920, respondent and appellant were husband and wife and had an infant child, Howard, aged about three years when the parents were divorced. On said May 7, 1920, appellant was, by the Circuit Court of Buchanan County, granted a divorce from respondent with custody of said infant child. There was personal service of process on defendant in that case (respondent here). The petition in the divorce case, after alleging the marriage, the birth of the child, and stating the grounds of divorce relied on, alleged that the defendant was an able-bodied man, capable of earning large sums of money and that she, plaintiff, was without means of support, and, after asking for a divorce, prayed:

"That she may have the care and custody of her said infant child, and that the court will adjudge to her out of the property of said defendant such support and maintenance and for such time as the nature of the case and the condition of the parties named require; and that the court will make such further orders and judgments from time to time touching the premises as to the court shall seem meet and just."

The decree in the divorce suit found the issues for the plaintiff, awarded her a divorce and custody of the child and adjudged "that for alimony and support of said minor child, plaintiff be allowed the sum of twenty-five dollars per month, the first payments to be made forthwith (then follows allowance of attorney fees), for which

said several allowances (and costs), plaintiff have execution against defendant.''

It appears that defendant left this State, either before or immediately after the granting of the divorce, without having made any payments to plaintiff under the decree, and remained outside the State until after the issuance of the execution herein.

Appellant, plaintiff in the divorce suit, never revived or took steps to revive the judgment for alimony and maintenance.

About the last of December, 1935, respondent, defendant in the divorce suit, became seized by inheritance from his father of certain property in Buchanan County. On June 25, 1936, appellant sued out the execution herein involved under said judgment of May 7, 1920, in the divorce suit. The execution recited that the plaintiff had recovered a judgment for $4,400 ''for child support and attorney's fees'' and $1.74 costs and commanded levy for ''said debt and costs.'' Proceedings followed which it is unnecessary to detail. Eventually respondent filed a motion to quash the execution on the ground that more than ten years had elapsed since the rendition of the judgment under which the execution was issued and there had been no revival of the judgment. The motion was sustained and this appeal followed. Such further facts as may be necessary will be stated in the course of the opinion.

As said by the Court of Appeals the question involved requires consideration of Section 886, Revised Statutes 1929 (Mo. Stat Ann., p. 1168), reading as follows:

''Every judgment, order or decree of any court of record of the United States, or of this or any other state, territory or country, shall be presumed to be paid and satisfied after the expiration of ten years from the date of the original rendition thereof, or if the same has been revived upon personal service duly had upon the defendant or defendants therein, then after ten years from and after such revival, or in case a payment has been made on such judgment, order or decree, and duly entered upon the record thereof, after the expiration of ten years from the last payment so made, and after the expiration of ten years from the date of the original rendition or revival upon personal service, or from the date of the last payment, such judgment shall be conclusively presumed to be paid, and no execution, order or process shall issue thereon, nor shall any suit be brought, had or maintained thereon for any purpose whatever.''

But we think other statutory provisions and the previous rulings of our courts of last resort must also be considered.

Section 1106, Revised Statutes 1929 (Mo. Stat. Ann., p. 1401), provides that a plaintiff or his legal representatives may, at any time within ten years, sue out a *scire facias* to revive a judgment and lien

406

but that no *scire facias* shall issue after ten years from rendition of the judgment. Sections 1107 to 1112, inclusive, provide the procedure for obtaining revival of the judgment and the effect thereof. If personal service of *scire facias* to revive cannot be obtained, service by publication is provided for, upon which the judgment may be revived as on personal service and (Sec. 1112), there may be successive revivals; so that whether the defendant remains subject to personal service of process or not the plaintiff can keep the judgment and lien alive.

Section 1113, Revised Statutes 1929 (Mo. Stat. Ann., p. 1404), provides that executions may issue upon a judgment at any time within ten years after its rendition. This section does not in terms say that an execution shall not issue after ten years, but, as held in State ex rel. Meyer v. Buford (Mo. App.), 18 S. W. (2d) 526, it so implies unless other statutory provisions provide an exception. In that case the time was held to have been extended by payments made within the ten year period as provided in Section 886, supra.

It has several times been held in this State that a judgment for alimony, whether in gross or payable in periodical installments, is subject to the same incidents as other judgments in actions at law and becomes dormant ten years after rendition unless kept alive by payments within such period or by revival. See the following:—Hauck v. Hauck, 198 Mo. App. 381, 200 S. W. 679; Dreyer v. Dickman, 131 Mo. App. 660, 111 S. W. 616; Eubank v. Eubank (Mo. App.), 29 S. W. (2d) 212; Nelson v. Nelson (en banc), 282 Mo. 412, 221 S. W. 1066. See, also, State ex rel. Meyer v. Buford, supra.

Most of the above cases involved alimony to the divorced wife, and the majority opinion of the Court of Appeals, without deciding whether or not they correctly apply the statutory provisions relative to judgments and executions in such situation, held in this case that such construction and application of those statutes should not be made where the judgment or award was for the support of a minor child whose custody was awarded to the mother in the divorce suit. The Hauck case, however, as is conceded, is directly in point here. In that case the wife, in a divorce action, obtained judgment of divorce, was awarded custody of the minor child of the marriage and a monthly allowance for support of the child. It was held that no execution could issue on the judgment after ten years from its rendition. Can the distinction indicated by the Court of Appeals' decision be properly made?

The statute, Section 1355, Revised Statutes 1929 (Mo. Stat. Ann., p. 1564), provides that "When a divorce shall be adjudged, the court shall make such order touching the alimony and maintenance of the wife, and the care, custody and maintenance of the children, or any of them, as, from the circumstances of the parties and the

nature of the case, shall be reasonable, and when the wife is plaintiff, may order the defendant to give security for such alimony and maintenance; and upon his neglect to give the security required of him, or upon default of himself and his sureties, if any there be, to pay or provide such alimony and maintenance, may award an execution for the collection thereof, or enforce the performance of the judgment or order by sequestration of property, or by such other lawful ways and means as is according to the practice of the court.''

Said section further provides that the court may from time to time make such alteration as to the allowance of ''alimony and maintenance, as may be proper.'' The court is also authorized to allow the wife alimony *pendente lite.*

It is contended that as to support of minor children, the judgment is a continuing judgment; that the duty of supporting the children rests primarily on the father, and that the divorce court retains jurisdiction during the minority of the children to modify or alter the original decree as to their custody and maintenance. Arguing from these premises appellant contends that a judgment rendered in favor of the wife for support of a minor child, can never become ''dormant'' during the minority of the child, and that execution may issue thereon even after ten years from date of rendition of the judgment.

That the duty to provide support and maintenance for his minor children rests primarily upon the father may be conceded; also that the court which granted the divorce retains jurisdiction until the majority of the child or children to modify or alter the decree as to custody and as to future support and maintenance is well established. But those principles do not seem to reach the exact question involved in this case. Here we have not a proceeding to modify the original decree as to *future* support of the minor child but an attempt to collect, by execution, money which has been expended by the divorced wife for support of the child and which, therefore, the father owes her, since it was primarily his duty to supply such support. If collected that money goes to her, not to the child, who has already had the past support. If there has been no allowance made in the divorce suit for support of the child the mother, having had custody of the child and having furnished him necessary support and maintenance, could recover from the father the reasonable value thereof in a common-law action. [See Kelly v. Kelly, 329 Mo. 992, 47 S. W. (2d) 762.] In such event the recovery, of course, would go to her. Whether or not, under the principle announced in the Kelly case, the wife could so recover in a common-law action for past support where there had been a monthly amount fixed in the divorce decree,—the amount of recovery, if any, to be affected, perhaps, by the amount so fixed,—we need not

decide. In any event the recovery sought in this case, by execution, would go to the divorced wife to reimburse her for past support furnished the child.

■ Now while, as we have seen, the court may from time to time make alterations in the decree as to the allowance for maintenance of the minor children so may it do as to alimony payable periodically —"from year to year," as it is sometimes expressed. If the wife is plaintiff the court may order the defendant to give security for such "alimony and maintenance" and upon his failure or default therein may award execution. If the plaintiff wife has failed to avail herself of the statutory provision as to security it would seem she obtains a judgment collectible on execution, as judgments in other actions at law. [See Nelson v. Nelson, supra.] As we have pointed out such judgment, so far as concerns alimony to the wife, is subject to the incidents of money judgments in other actions at law, though the alimony be payable periodically, and becomes dormant ten years after rendition unless kept alive by revival or by payments. [Nelson v. Nelson, supra, and cases cited.] In this respect— the manner of collecting a judgment of this sort—the statute seems to make no distinction between an allowance of alimony "from year to year" to the wife and a judgment—or allowance—to the wife for support of minor children, and we do not feel justified in writing into the statute something the Legislature did not write there.

■ We have not overlooked the fact, urged by respondent, that even if a distinction could properly be made in the matter of collection by execution as between alimony awarded the wife and an award to her for support of the child, the judgment in this case does not specify how much of the award of $25 per month was for the wife and how much for support of the child. Also the execution includes the allowance in gross made in the original decree for plaintiff's attorney fees. These circumstances might afford difficulty in the enforcement of the execution, were we to hold that the execution is good as to that part of the judgment intended for maintenance of the child but not good, under our prior decisions, as to the wife's alimony and attorney fees. Respondent pertinently asks, how much of the total amount of the execution was for support of the child and how much for alimony?—a question impossible to answer from the record. True, the *execution* says $4400 for "child support and attorney's fees" plus $1.74 costs. The execution must be based upon the judgment, which does not specify what portion of the $25 per month was for alimony and what for child support. But we shall not borrow trouble by attempting to solve the problem thus presented. If the judgment in question be treated as being all for "child support," the execution being with the purpose and effect of collecting for plaintiff money which she had previously expended

for such past support and which, if so collected, would go to her, we think the matter of collecting by execution must, under the statute, be determined by the same rules that would· govern if the judgment were one for alimony to the wife.

Appellant contends that even though, absent payments on the judgments, execution would be barred after ten years from rendition of the judgment, it is not so barred in this case because of payments claimed to have been made. This contention requires a further statement of facts.

Plaintiff testified in the proceedings relative to the execution in substance that:

Defendant left Missouri after the divorce was granted. She located him in Los Angeles, California, in 1926, and asked him to comply with the order of court in the divorce case concerning the support of the child. He did nothing toward compliance. After a time—she did not say how long—she brought some sort of suit or action in what she referred to as the "Failure to Provide Court" in Los Angeles. The record does not disclose the character or jurisdiction of said court nor the form of action brought, but evidently the action was penal in its nature. Plaintiff testified that defendant was sentenced to "two years on the road gang." She further testified:

"Q. What was the alternative? A. They kept him there around six months and I was receiving $16.00 a month, and then they let him out on probation and he was to pay $5.00 a week, and he paid that as long as he was on probation.

"Q. What was the total amount that you received with the assistance of the Probation Court there in Los Angeles? A. Exactly $595.00.

"Q. Then what became of him? A. I took him back into court and they told him that just because the probation was over was not any reason for him to stop paying, so he paid for a while, and then stopped and he wanted the boy and I let him take the boy, and he finally told me he couldn't keep the boy any longer, and that I would have to take him back, which I did, and then I found him working in Los Angeles and I took him into the Failure to Provide Court again, and he left Los Angeles."

She said defendant "jumped the court and left;" that she received no further payments and did not know defendant's whereabouts, that said payments referred to by her were made from 1929 to 1932.

If a payment or payments have been made on the "judgment, order or decree" Section 886, supra, seems to authorize the issuance of execution within ten years after the last payment so made. That section and Section 1113, supra, should be construed together and

harmonized. [See State ex rel. Meyer v. Buford, supra.] Under said Section 886 the payment, in order to extend the time, or toll the statute, must be made within the ten year period and must be "entered upon the record." Appellant, in the *statement* in her brief says that on October 15, 1936 (which was after issuance of the execution), she caused a credit of $595 to be entered on the margin of the record of the divorce suit judgment. The abstract of record before us does not show that credit. In State ex rel. Meyer v. Buford, supra, it was admitted that the defendant in the divorce suit had paid, under the decree, the monthly installments of alimony from December 1, 1914, the date of the decree, to and including June 1, 1928. Credits were not entered of record as payments were made, but on January 21, 1929, the whole amount theretofore paid was credited on the margin of the record, and on the same date, but *thereafter,* execution was demanded for the balance of the judgment. The Court of Appeals ordered that execution should issue, holding that the payments, made, as they admittedly were, under and pursuant to the decree, tolled the statute, Section 886, supra, and inferentially holding that the fact that the payments were not "entered upon the record" at the times they were respectively made did not bar issuance of execution. It should be noted, however, that the credit was entered upon the record before execution was demanded. In the instant case the credit had not been entered of record when the execution issued. Whether or not that fact would prevent the application of Section 886 tolling the statute might present a nice legal question, but one which, in our view of this case, we deem it unnecessary to decide, because:

Section 886, supra, provides that if a payment has been made "on such judgment, order or decree," etc., the ten-year period within which execution may issue runs from the date of the last payment so made. But we think this means that such payment, in order to extend the time, must have been made voluntarily or under and pursuant to the judgment or decree in the divorce case. In Eubank v. Eubank, supra, it was in effect so held. In the case before us the payments were not so made. It does not appear from the record that the judgment in the divorce case was before the California Court or in any way considered by it. All that appears, and that only from the rather vague oral testimony of plaintiff, is that defendant was prosecuted under some (apparently penal) statute of California, was convicted and sentenced to penal servitude and was paroled on condition that he make certain contributions toward the support of his child, which, acting under such compulsion, he for a time made. We do not believe payments so made can be considered as made on or pursuant to the judgment or decree in the divorce case, within the meaning of said Section 886, so as to toll the statute.

It results from the foregoing that the action of the circuit court in quashing the execution must be and it is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.