[No. 21307. Department One. November 15, 1928.]

SHERMAN A. PINNELL, *Respondent,* v. W. O. COPPS, *as Administrator of the Estate of Dennis Curran, Deceased, Appellant.*[1]

[1]Reported in 271 Pac. 882.

*Stanley J. Padden* and *George F. Ward,* for appellant.

*A. A. Anderson* and *Reames & Moore,* for respondent.

BEALS, J.—Sometime prior to 1898, Dennis Curran married Eliza Pinnell, who was then a widow with two sons by a former marriage. One of these sons, Sherman A. Pinnell, was then married and had a two-year-old daughter. All the parties were residents of Astoria, Oregon, and for a time Mr. and Mrs. Curran lived in the same house with her son Sherman and his family. In 1898, Dennis Curran went to Alaska, where he remained for approximately twenty years; he did not send his wife any money; nor did he communicate with her in any way, and she thought him dead. Eliza Curran continued a member of her son's household until about 1900, when he and his family moved from the house which they had been occupying with his mother and set up their own establishment. In 1906, Eliza Curran moved to the home of her sister, a Mrs. Clark, at Ocean Park, Washington, where she resided until Mrs. Clark's death in 1909. Mrs. Curran inherited some property from her sister, and continued to make her residence at Ocean Park until her death in 1921.

In 1918, Dennis Curran reappeared upon the scene, and he and his wife resumed the marital relation and lived together at Ocean Park until her death. Mrs. Curran left some property which was divided equally between her surviving husband and her two sons. Dennis Curran died June 30, 1926, and the defendant W. O. Copps was, by the superior court for King county, appointed administrator of his estate. The administrator published notice to creditors, and thereafter, and within the time limited therein for the pre-

sentation of claims against said estate, plaintiff presented his claim in the sum of $5,860 for money and supplies furnished to his mother, Eliza Curran, during the period Dennis Curran was absent in Alaska, and for the further sum of $280, which he claimed as rent due him from Dennis Curran on account of the occupation by Curran of a certain dwelling house at Ocean Park, the property of claimant.

Upon his claim being rejected by the administrator, plaintiff instituted this action, and upon a trial thereof to a jury, a verdict was rendered in favor of plaintiff for the sum of $5,860, being the exact amount claimed by plaintiff as due him for money and necessaries furnished by him to his mother during his stepfather's absence in Alaska, as set forth by plaintiff in the first cause of action contained in his complaint, the second cause of action therein being for the item of rent mentioned by plaintiff in his claim as filed with defendant, as administrator.

It is evident that the jury found in plaintiff's favor upon the first cause of action and against him on the second, and we consider the case on the basis that the recovery was only on the first cause of action.

Defendant moved for judgment in his favor notwithstanding the verdict, or, in the alternative, for a new trial, and, upon the denial of these motions and the entry of judgment in plaintiff's favor upon the verdict, appealed to this court.

Appellant assigns several errors: the first being that the court erred in refusing to direct judgment for the defendant and in entering judgment for the plaintiff; and second, that the court erred in refusing to dismiss the action upon the ground that it is barred by the statute of limitations. Other errors are assigned, but in view of the fact that in our opinion the

second assignment of error is well taken, it is not necessary that the others be discussed.

Dennis Curran returned from Alaska in November, 1918, and respondent does not claim that he furnished money or necessaries for his mother after that date. He bases his claim against appellant administrator upon the ground that Dennis Curran should have supported his wife during the period he was absent in Alaska, and that because he failed to do so and because respondent did assist Mrs. Curran, his mother, with money and necessaries, Dennis Curran became liable to him upon an implied contract in a sum equal to the amount of money which respondent delivered to his mother, plus the value of the supplies which he furnished her during that time. No writing is produced which supports any liability on the part of Dennis Curran or his estate, and respondent bases his claim upon an implied contract which, under the law, is subject to be barred by the three year statute of limitations.

Respondent's entire case is nebulous and hazy in the extreme, but for the purpose of this opinion we assume, without deciding, that testimony was introduced which, if believed by the jury, would support a finding that an implied contract once existed whereby Dennis Curran was obligated to reimburse respondent in accordance with respondent's claim, or at least to some extent.

To escape the bar of the statute, respondent relies upon the fact that Dennis Curran, very shortly before Christmas Day, 1923, purchased in the city of Portland certain articles of household furniture and caused the same to be delivered to respondent in Astoria. This furniture consisted of a davenport, a lamp and several other articles, and it clearly appears that the articles were of good quality and of substantial

value. Respondent asserts that the delivery of this furniture constituted a payment by Mr. Curran to respondent on account of the indebtedness which he claims existed in his favor, and started anew the running of the statute.

It may be remarked that it appears beyond question that respondent and his stepfather, Dennis Curran, were at all times after Mrs. Curran's death upon the best of terms; that Mr. Curran was welcome in respondent's home, was fond of respondent's children, and even lent respondent considerable sums of money, which respondent repaid without question, one note for $1,000 secured by mortgage, having been paid by respondent after Mr. Curran's death to appellant as his administrator.

Over five years had elapsed from the date respondent's cause of action accrued until the delivery of the furniture to him by Mr. Curran, so that respondent's cause of action, if any, has been once completely barred; the delivery of the furniture, according to respondent's theory, constituting a revival of a once dead claim, rather than the keeping alive of a claim never completely outlawed.

To support his contention that the delivery of the furniture was intended by Mr. Curran as a payment on account of a legal obligation, respondent produced as a witness on his behalf Mrs. Sarah Ross, whose testimony on this point was as follows:

"Q. Please state the substance of that conversation you had with him about this furniture, this conversation with Mr. Curran. A. We were sitting on the porch; it was about evening. We were talking about the sunset, and so forth. I was anxious to go out to the porch to see the sunset. He got started on this affair. He knew that I was very fond of his wife. He knew me for so many years, and everything, that he kind of wanted to reinstate himself, I think, in my es-

timation. He started to tell me what he was doing for the family as recompense for what they had done for his wife when he was gone. (After interruptions the witness continued.) Well, I spoke about his return and all, how surprised we were when he got back. Of course, he was asking me different questions about Astoria, about the old-timers living there. So, finally he got to talking about his wife, about the children, and so on, and I said, 'Well, Sherman, I feel is the one—' I called him by his given name, because I have known the boy so well. That is Mr. Pinnell in this case. I said, 'Sherman has certainly been good to his mother while you were gone.' He said, 'He will be well paid for it; I will never forget it.' He told me what he had done. Q. What did he say he had done? A. He said he had already had in mind what he wanted to do. He had gotten this furniture—some furniture for them, and he expected to do more for them. He had given the little boy a watch and a suit of clothes, and given one of the little girls a certain amount of cash; I can't say that I remember whether it was twenty-five or fifty dollars; I don't remember that. Q. I wish you would—The Court: (Interrupting) He asked you about the davenport; not about the little boy. Q. Was there anything else about the furniture that you wish to say, or anything? A. I spoke to him in this way: 'Can you afford it?' I knew he was an old man; I didn't know just how he was fixed financially. He said, 'I can afford to pay,' he said, 'pay for what I owe them' or something to that effect.''

On cross examination, referring to the matter of the furniture, this witness testified:

''A. I didn't know whether the old man could afford all this. How could he take care of himself later on? Q. How did this subject of this furniture come up at that time? A. I told you I asked him. Q. You asked him what? A. I was telling him about what Sherman had done for his mother. He said he would not lose anything by it. Q. Did you ever see the furniture before that? A. I did not. Q. You didn't know the furniture was in existence? A. Only what Mr. Curran

told me about the furniture. Q. You brought up the conversation about this, yet, you knew nothing about the furniture being in existence? A. I didn't bring up the conversation about the furniture. I was telling him how good Sherman had been to his mother. He was telling me what he was going to do for them. He said he had already done this, got the little boy the watch and the suit of clothes, and one of the girls a certain amount of money; I don't remember the amount, whether it was twenty-five or fifty dollars. Q. He told you he was going to be nice to the family? A. Going to be good to the family. Q. And give them things, like giving the little boy fifty dollars and the girl a watch, something like that? He was being nice to them—A. (Interrupting) He gave the little boy the watch. Q. (Continuing) —because he felt grateful to them? A. Because he felt grateful for what they had done for him. Q. He told you he had given Sherman this furniture? A. Yes. I felt at that time—'' at which place the witness was interrupted and gave no further testimony concerning this matter.

Respondent testified as to the receipt of the furniture by him, and that he paid the cartage thereon from the dock at Astoria to his house, but was, of course, precluded by the statute from testifying as to any conversations between himself and the deceased concerning the same.

This court has consistently held, ever since the rendition of the decision in the case of *Morgan v. Morgan,* 10 Wash. 99, 38 Pac. 1054, that the defense of the statute of limitations is not unconscionable, but is entitled to the same consideration as any other defense. As was said in the case of *Arthur & Co. v. Burke,* 83 Wash. 690, 145 Pac. 974:

"The statute is a legislative declaration of public policy which the courts can do no less than respect."

In the same opinion, referring to the matter of the tolling of the statute by a payment on account, the court says:

"It is also a settled law of this state, following the trend of authority in others, that in order to toll the statute of limitations, the partial payment must have been a voluntary payment made or authorized or ratified by the party against whom the payment is invoked as tolling the statute."

■ It is undoubtedly the law that in order for a delivery of money, property or credit by a debtor to his creditor to toll the statute of limitations, as constituting a payment on account, the act relied upon as such must be intended by the debtor as a payment on account of an indebtedness or legal obligation, and not as a gift. Our view of this case renders it unnecessary to discuss appellant's further contention that the delivery of the property, money or credit must also be accepted by the creditor as a payment, and we leave that question open for future discussion. Wood on Limitations (4th ed.), §§ 96-7-8-9; *Arnold v. Downing*, 11 Barb. (N. Y.) 554; 37 C. J. 1146 (§ 626).

In our opinion the testimony relied upon by plaintiff as proof of the fact that Dennis Curran intended the furniture which he purchased and caused to be delivered to plaintiff as a payment on account of an indebtedness due, or at one time due, from him to plaintiff, is insufficient to afford any basis whatsoever for the verdict of the jury in plaintiff's favor, which must have included a finding, under proper instructions by the court, to the effect that the delivery of the furniture under the facts testified to constituted in law a payment.

It seems to us that the testimony of Mrs. Ross indicates no more than the fact that Mr. Curran entertained a proper recognition of the very commendable filial spirit shown by respondent towards his mother, and was endeavoring to demonstrate by his conduct that he appreciated what respondent had done. From this testimony it appears that Mr. Curran had made

handsome presents to respondent's children, and we are satisfied that from the testimony it affirmatively appears that the furniture was a present, and was never considered by the donor as a payment of any sort or description.

The expressions of appreciation uttered by Mr. Curran are entirely insufficient to support a finding that the furniture was a payment.

This court, in the case of *Griffin v. Lear*, 123 Wash. 191, 212 Pac. 271, in considering the effect of a writing acknowledging a debt, which writing was relied upon as tolling the statute of limitations, says:

"A writing acknowledging a debt which has already been barred ought to be construed much more strictly than a writing acknowledging a debt against which the statute has not run."

While there are many distinctions between a written acknowledgment of a debt and a payment, when such matters are relied upon to keep alive an indebtedness and toll the statute of limitations, nevertheless the distinction drawn by the court should be held to apply with equal force to cases where the question to be determined is whether or not certain articles admittedly delivered were a present or a payment on account.

We are thoroughly convinced that the testimony before us is insufficient to support the verdict of the jury in respondent's favor, and that any obligation on the part of Dennis Curran towards respondent, if any such legal obligation ever existed, was, long prior to the institution of this action, completely barred by the statute of limitations.

The judgment of the superior court is reversed, with directions to grant appellant's motion for judgment in his favor notwithstanding the verdict.

FULLERTON, C. J., MITCHELL, TOLMAN, and HOLCOMB, JJ., concur.