FIDELITY UNION TRUST COMPANY, PLAINTIFF-APPEL-
LANT, v. EDWARD F. FITZPATRICK, DEFENDANT-RE-
SPONDENT.

Argued February 7, 1946—Decided April 25, 1946.

For the plaintiff-appellant, *Hood, Lafferty & Emerson* and
*Edward J. Brown.*

For the defendant-respondent, *Bernard P. Hughes.*

The opinion of the court was delivered by

DONGES, J.   This is an appeal from a judgment of the
Supreme Court, entered on a directed verdict for defendant
at the Essex Circuit.

The suit was for a debt originally incurred in 1929 when
the defendant, Edward F. Fitzpatrick, executed a promissory
note to the plaintiff-appellant, Fidelity Union Trust Company,
in the sum of $34,449.50.   Payments were made on the debt,
and on March 20th, 1934, the note in suit was executed in
the sum of $30,350.   No payments on account of principal

or interest have been made directly by defendant since that time. In August, 1929, defendant pledged certain shares of stock and, in connection therewith, executed a collateral pledge agreement. This collateral dropped, in value to such an extent that when it was sold by plaintiff in 1941 only $159.35 was realized therefor. This amount was applied by plaintiff to the obligation.

In 1931 and in 1932, more than six years before the commencement of suit, defendant assigned for the benefit of plaintiff, and for its protection, insurance policies in the face value of $20,000. He paid the annual premiums thereon until 1941, since which time they have been paid by plaintiff.

The suit was in two counts, one upon the note, dated March 20th, 1934, and the other upon the pledge agreement, dated August 23d, 1929. The defense was the statute of limitations, and the trial judge held that the claim was within the bar of the six year limitation and gave judgment for the defendant.

The agreement in question was signed by defendant and after his signature was appended "(L. S.)," which was part of the printed form of agreement and not in the handwriting of defendant. To the left of defendant's signature were the words, "Signed, Sealed and Delivered in the Presence of D. C. Kirk." There were no words in the body of the agreement indicating that it was a sealed instrument, such as "witness my hand and seal" or "signed, sealed and delivered," or any indication that the person signing the agreement regarded it as a sealed instrument.

The plaintiff seeks to avoid the operation of the statute on three grounds, first, that the six year limitation in the statute is not applicable because the pledge agreement contains an independent covenant to pay the indebtedness and was a sealed instrument, which would not be within the statute until sixteen years had elapsed.

Under our statute, an actual seal or wafer is no longer necessary to constitute an instrument under seal, provided there be a scroll or other device appended, *R. S.* 1:1–2.1, and it has been held that the lettered "L. S." are such a scroll or device. *McClellan* v. *F. A. North Co.,* 14 *N. J. Mis. R.* 760. Words in the body of the instrument such as "sealed with

our seals," which are not accompanied by a scroll or device, are not sufficient. A scroll, not accompanied by words indicating the sealing of the instrument by the maker thereof, is insufficient. *Newbold* v. *Lamb*, 5 *N. J. L.* 449; *Corlies* v. *Van Note, Adm'r*, 16 *Id.* 324; *Coral Gables, Inc.*, v. *Kretschmer*, 116 *Id.* 580. In *Corlies* v. *Van Note, Adm'r, supra*, it was held that something must appear in the body of the writing to indicate that the party making it intended to do so under his hand and seal. *In re Pirie*, 198 *N. Y.* 209; 91 *N. E. Rep.* 587, it was said, "The reason for this is that the mere attaching of a seal after a signature, without any recognition of it in the body of the note or in connection with the signing, in the absence of evidence showing the time when, and the person by whom the seal was affixed, would open the door to frauds and forgeries and enable evil disposed persons to prevent the running of the six year statute of limitations, by merely attaching at the end of the note a seal."

The question is, does this instrument have words in the body of it which say that it was sealed? The agreement was signed by defendant and witnessed as stated above. The reference to signing and sealing is not in the "body of it." Those words merely reflect the statement or attestation of the witness rather than of the maker of the agreement, and the maker cannot be bound by them to the extent of turning it into a sealed instrument.

It is next argued that the assignment of the life insurance policies and the payment of the premiums thereon, to a time within the six year limitation, operates to take the case out of the statute. To stop the running of the statute of limitations there must be a payment by the debtor upon the debt itself, either of principal or interest. The payment of premiums was not a payment upon the debt and did not stop the running of the statute of limitations.

The third point is that there was a fact question for the jury as to whether or not the application of the proceeds of sale of collateral, in the sum of $159.35, in 1941, was a voluntary payment by the defendant. This point is based upon the testimony of a bank official who said he called upon the defendant on April 7th, 1941, and that the defendant stated

he could make no further payments on the debt, and that "he could do nothing more and, therefore, directly repudiated the payment of anything else on the loan," whereupon the official stated that the bank would have to sell the collateral. Thereupon, it was testified, defendant said, "Well, you better do that, because I have nothing more that I can pay." Taking the inference most favorable to plaintiff, these words do not make the transaction a payment by defendant to stop the statute. The bank held the collateral and had complete authority to sell it and apply the proceeds as it saw fit, and the words relied upon gave nothing more than it already had and took nothing from the defendant that he had retained. If a creditor could keep a debt alive and beyond the operation of the statute of limitations by selling a part of pledged collateral every five years, the purpose of the statute would be frustrated. To bind the debtor, some act of his must be relied upon and not merely action by the creditor within its clear right regardless of acquiescence by the debtor. Here the defendant had no control over the sale and it was a matter wholly within the plaintiff's wishes.

We conclude, therefore, that the trial judge did not err in directing a verdict for defendant under the proofs submitted.

The judgment under review is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, BODINE, DONGES, HEHER, RAFFERTY, FREUND, McGEEHAN, JJ. 9.

*For reversal*—PERSKIE, COLIE, OLIPHANT, WELLS, DILL, JJ. 5.