Grace J. PETERSON, Respondent,

v.

Mona D. PETERSON, Administratrix of the Estate of Clyde H. Peterson, Deceased, Appellant.

No. 44287.

Supreme Court of Missouri.

Division No. 2.

Dec. 13, 1954.

J. Dorr Ewing, Maryville, Montgomery L. Wilson, Maryville, for appellant.

Robison & Miller, Maysville, J. B. Beavers, Cameron, for respondent.

WESTHUES, Commissioner.

Plaintiff, on March 10, 1953, filed a demand against the estate of Clyde H. Peterson, deceased. The Probate Court of Nodaway County, Missouri, wherein the claim was filed, disallowed the claim and plaintiff appealed to the Circuit Court. On application for a change of venue, the Circuit Court of Nodaway County sent the case to the Circuit Court of Harrison County. A jury was waived and the case was tried before V. C. Rose, the regular judge of the Circuit Court. The trial resulted in a judg-

ment in plaintiff's favor in the sum of $10,-357.25. An appeal was taken to this court.

Plaintiff, Grace J. Peterson, was the wife of Clyde H. Peterson. She secured a divorce from him in the Circuit Court of Platte County, Missouri, on March 12, 1940. The Circuit Court in the divorce action entered a judgment in plaintiff's favor in the sum of $50 per month as alimony and support of a minor child, to be paid on the 12th day of each month. It is this judgment for alimony and support that formed the basis of her claim in the Probate Court against the estate of her former husband.

It is apparent that the statute of limitations, Section 516.350 RSMo 1949, V.A. M.S., bars the claim unless the running of the statute was interrupted by some act of the deceased. Plaintiff to avoid the plea of the statute of limitations, interposed as a defense, claimed that Clyde H. Peterson, the judgment debtor, had made a payment of $100 to plaintiff, his former wife, in the year 1944. In support of this claim, the plaintiff offered the following evidence: Forrest Robert Peterson, a son of plaintiff and the deceased, was called as a witness. From his evidence, we learn that during the year 1944, he was in the military service; that in September of 1944, he was stationed at Close Landing, near Modesta, California. He corresponded with his mother and father. He testified that his father wrote a letter in which the father informed him that he had given his mother $100. Note his evidence:

"Q. Now, Mr. Peterson, tell the Court the substance of that letter, as near as you can, what your father said in a letter to you in September 1944 as to any payments he might (have) made to your mother or a payment made for her benefit. A. He said he had paid the interest on the mortgage on the farm and he had stopped by the farm and given my mother a Hundred Dollar bill.

"Q. Did you advise your mother you had that communication from your father? A. Yes, I did.

"Q. Mr. Peterson, are you able to tell the court about the date you received that letter from your father? A. Not exactly, of course, but it was the first part of September of 1944.

"Q. And by what means were you able to establish that as the time? A. Well by some of the letters I had written my mother, I saw the date on those and knew the time, but I would not say the month.

"Q. Do you recall how soon it was after you received this communication from your father that you wrote your mother about it? A. A very short time—a day or two—I am not sure."

It is not contended that the interest payment on the mortgage had any relation to the judgment so we disregard that payment.

Plaintiff also introduced letters written by the son to his mother wherein he referred to the $100. Defendant objected to the introduction of these letters on the theory that they were self-serving, hearsay, and incompetent and not binding on the deceased.

■ This case was tried before the court without a jury so it is here to be reviewed de novo.

We shall not pass on the question of whether the letters were competent evidence. From the view we take of this case, the contents of the letters do not aid plaintiff except that they tend to corroborate the evidence of the witness that his mother in fact received $100 from the father.

In the letter dated September 10, 1944, from the son to his mother, the plaintiff, the following appears:

"I got a letter from Dad yesterday when I got yours. He told me about coming down home and taking care of the interest and giving you the $100 \frac{00}{xx}$ Bill. Said your eyes really stuck out. I imagine they would. So would mine He didn't seem peeved either but said he was very busy."

In another letter dated September 18, 1944, was contained the following:

"I got your letter from Chillicothe telling me about the $100 Dad gave you. I heard from him and in my answering I told him I really appreciated what he'd done."

■ Plaintiff in this case is relying on payments to avoid the statute of limitations. The burden of proof is therefore on plaintiff because the judgment is more than 10 years old with no credit entered thereon. 54 C.J.S., Limitations of Actions, § 389, p. 529; Walker v. Sieg, 23 Wash.2d 552, 161 P.2d 542, loc. cit. 546(6, 7); Ryan v. Canton National Bank, 103 Md. 428, 63 A. 1062, syl. (2); Martin v. Lewis, Mo., 244 S.W.2d 87, loc. cit. 89, 90(2); Eubank v. Eubank, Mo.App., 29 S.W.2d 212, loc. cit. 214(3, 4).

Plaintiff also has the burden of showing that the $100 was a payment on the judgment and not a gift; that it was intended as a payment and accepted as such. 54 C.J.S., Limitations of Actions, 322, p. 425; Pinnell v. Copps, 149 Wash. 578, 271 P. 882, loc. cit. 884(4) (5); Walker v. Sieg, supra, 161 P.2d loc. cit. 546(3, 4) (5); Ryan v. Canton National Bank, supra, 63 A. 1062, syl. (3); Fidelity Union Trust Co. v. Fitzpatrick, 134 N.J.L. 250, 46 A.2d 837, loc. cit. 839(7, 8); Mayes v. Mayes, 342 Mo. 401, 116 S.W.2d 1, loc. cit. 6(12, 13); Eubank v. Eubank, supra, 29 S.W. loc. cit. 214(5, 6).

■ Considering the evidence in its entirety, we have concluded the only inference to be drawn is that plaintiff received $100 from her former husband in 1944. However, the evidence does not justify the inference that the $100 was a payment on the judgment or that it was so treated by plaintiff. The son testified his father had written to him telling him that he had *"given* my mother a Hundred Dollar bill." In his letter to his mother in commenting on this news from his father, he wrote "He told me about coming down home and tak-

ing care of the interest and *giving* you a 100 $\frac{00}{xx}$ Bill. Said your eyes really stuck out. I imagine they would. So would mine." In the letter answering his mother's letter, the son wrote "I got your letter from Chillicothe telling me about the $100 Dad *gave* you." (Italics ours.) The evidence indicates that the $100 was a gratuity and not a payment on the judgment. Note that in every instance when comment was made about the $100 it was spoken of in words indicating that it was a gift and not a payment of an alimony and support judgment. No credit was given on the judgment; in fact, so far as the record shows, the judgment was ignored until 13 years after its entry and after the death of the judgment debtor. Plaintiff had a number of remedies she could have invoked. The judgment could have been timely revived or if her former husband was possessed of property, she could have had an execution issued, or she could have credited the judgment if any payments had in fact been made on the judgment as provided for by Section 516.350, supra. Plaintiff, by waiting until the statute of limitations had run, had the burden of showing that the judgment debtor made a payment on the judgment. This she has failed to do and the judgment in her favor must be reversed.

**It is so ordered.**

BOHLING, C., concurs in result.

BARRETT, C., concurs.

**PER CURIAM.**

The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court.

LEEDY, Acting P. J., ELLISON, J., and ANDERSON, Special Judge, concur.

DEW, Special Judge, concurs in result.